**McGuireWoods LLP**
Sabrina A. Beldner, Esq. (SBN 221918)
    Email: sbeldner@mcguirewoods.com
Amy E. Beverlin, Esq. (SBN 284745)
    Email: abeverlin@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Tel:    (310) 315-8200
Fax:    (310) 315-8210

**McGuireWoods LLP**
Sylvia J. Kim, Esq. (SBN 258363)
    Email:  skim@mcguirewoods.com
2 Embarcadero Center, Suite 1300
San Francisco, CA 94111
Tel.:    (415) 844-9944
Fax:  (415) 844-9922

Attorneys for Defendants CENTERRA GROUP, LLC, CENTERRA SERVICES INTERNATIONAL, INC., WACKENHUT SERVICES, INC., and G4S GOVERNMENT SOLUTIONS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNIE MONARREZ individually, and on behalf of other members of the general public similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>CENTERRA GROUP, LLC, an unknown business entity; CENTERRA SERVICES INTERNATIONAL, INC., an unknown business entity; WACKENHUT SERVICES, INC., an unknown business entity; G4S GOVERNMENT SOLUTIONS, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>    Defendants. | CASE NO.<br><br>[Los Angeles Superior Court Case No. 21STCV07215]<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION**<br><br>Complaint Filed:        2/24/2021<br>Complaint Served:      3/29/2021 |

143254306.2

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1332(d), 28 U.S.C. § 1441, *et seq.*, and 28 U.S.C. § 1446, *et seq.*, Defendants CENTERRA GROUP, LLC ("CGL"), CENTERRA SERVICES INTERNATIONAL, INC. ("CSI"), WACKENHUT SERVICES, INC. ("WSI"), and G4S GOVERNMENT SOLUTIONS, INC. ("G4S") (collectively, the "Defendants"), by and through their undersigned counsel, hereby remove the above-captioned action from the Superior Court of the State of California in and for the County of Los Angeles (the "State Court") to this Court on the ground of original jurisdiction based on the Class Action Fairness Act ("CAFA") and on all other grounds for jurisdiction to the extent applicable, including traditional diversity and/or federal question.  In support of their Notice of Removal, and in accordance with 28 U.S.C. § 1446, Defendants aver as follows:

## I.   STATEMENT OF JURISDICTION

1.   Among other grounds, including traditional diversity and/or federal question jurisdiction to the extent applicable, the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA" or the "Act") grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a putative class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d).

2.   There is no presumption against removal under CAFA.  *See, e.g.*, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").   To the contrary, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant.'" *Id.* at 554 (quoting S. Rep. No. 109-14, p. 43 (2005)).

3.     This Court has jurisdiction over this case under CAFA, and this case may be removed pursuant to 28 U.S.C. § 1441(a), because: (1) the proposed class contains more than 100 members; (2) the named defendants are not a state, state official, or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member and at least one of Defendants.

4.     Removal to this Court is proper because the action was filed and is pending in the Superior Court of the State of California in and for Los Angeles County, which is within this judicial district.  28 U.S.C. §§ 128(b), 1446(a).

5.     As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II.     STATUS OF THE PLEADINGS

6.     On or about February 24, 2021, Plaintiff JEANNIE MONARREZ filed a putative Class Action Complaint for Damages (the "Complaint") in the State Court, entitled *Jeannie Monarrez individually, and on behalf of other members of the general public similarly situated v. Centerra Group, LLC, an unknown business entity; Centerra Services International, Inc., an unknown business entity; Wackenhut Services, Inc., an unknown business entity; G4S Government Solutions, Inc., an unknown business entity; and DOES 1 through 100, inclusive*, Case No. 21STCV07215 (the "State Court Action"), a true and correct copy of which is attached hereto as **Exhibit A**.

7.     On March 29, 2021, the registered agents for service of process for CSI, CGL, and G4S, and the purported agent for service of process for WSI, were each personally served with copies of the Summons and Complaint.  True and correct copies of the Summons, Complaint, and every other process, pleading, and order served on Defendants in this action to date are attached hereto as the Exhibits identified below:

| **Exhibit** | **Document** |
|---|---|
| A | Complaint |

2

|   | B | Summons |
|---|---|---|
|   | C | Civil Case Cover Sheet |
|   | D | Civil Case Cover Sheet Addendum and Statement of Location |
|   | E | Notice of Case Assignment – Unlimited Civil Case and Instructions for Handling Unlimited Civil Cases |
|   | F | Court Order Regarding Newly Filed Class Action |
|   | G | Voluntary Efficient Litigation Stipulations and Alternative Dispute Resolution Package |

8.    Defendants are informed and believe that the aforementioned documents and exhibits constitute all of the process, pleadings and orders on file in the State Court Action at the time of this Removal.

9.    Plaintiff's Complaint alleges ten (10) purported causes of action for:

(1)    Failure to pay overtime under Cal. Lab. Code § 510;

(2)    Failure to provide meal periods and/or pay meal period premiums under Cal. Lab. Code §§ 512 and 226.7;

(3)    Failure to provide rest periods and/or pay rest period premiums pursuant to Lab. Code § 226.7;

(4)    Failure to pay minimum wages under Cal. Lab. Code §§ 1194, 1197 and 1197.1;

(5)    Waiting time penalties based on Defendants' alleged failure to pay wages to terminated or separated employees pursuant to Cal. Lab. Code § 203;

(6)    Failure to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226;

(7)    Failure to keep requisite payroll records in violation of Cal. Lab. Code § 1174(d);

(8)    Failure to reimburse necessary business expenses in violation of Cal. Lab. Code §§ 2800 and 2802; and

(9)    Unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, based on the above-listed violations of California state law.

*See id.*, ¶¶ 35-81.  Plaintiff purports to bring these alleged claims on behalf of himself and a putative class defined as "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of [the] Complaint to final judgment and who reside in California." *Id.*, ¶ 15 (identifying two subclasses as well).

10.    Defendants are informed and believe that they are the only defendants in the State Court Action that have been served with process in the State Court Action. In any event, WSI and G4S are <u>not</u> existing legal corporations, limited liability companies, unincorporated associations, or limited partnerships.  Thus, notwithstanding that WSI and G4S are *each* diverse from Plaintiff, neither WSI nor G4S can be served with process and are to be disregarded for purposes of this removal. *See, e.g.*, *Omega Video Inc. v. Super. Ct.*, 146 Cal.App.3d 470, 477 (1983) ("A non-existent entity may not be effectively served with summons as a named defendant and may not be subjected to jurisdiction of a court by an entry of a general appearance on its behalf."); *see also* discussion *infra*, ¶¶ 18-19.

11.    Defendants are informed and believe that there has been no service of process upon Defendants Does 1 through 100, which are fictitious defendants to be disregarded for the purposes of this removal.  *See* 28 U.S.C. § 1441(a).

## III.    JURISDICTION PURSUANT TO CAFA IS SATISFIED

### A.    THIS ACTION IS A CLASS ACTION UNDER CAFA

12.    Pursuant to Section 4 of CAFA, 28 U.S.C. § 1332(d)(2):

The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which —

(A)    any member of a class of plaintiffs is a citizen of a State different from any defendant; ….

13.    CAFA defines a "class action" to include civil actions filed under state statutes or rules of procedure similar to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") that authorize an action to be brought by one or more representative persons as a class action.  The Complaint alleges that "[t]his is a Class Action pursuant to California Code of Civil Procedure section 382" and that "Plaintiff brings this Action on her own behalf and on behalf of all other members of the general public similarly situated, and thus, seeks class certification under California Code of Civil Procedure section 382."  *See* Exh. A (Complaint), ¶¶ 1, 14; *see also id.* at ¶¶ 14-18 ("Class Action Allegations").  This action is therefore a "class action" under CAFA.

**B.    MINIMUM DIVERSITY OF CITIZENSHIP EXISTS**

14.    Minimum diversity exists pursuant to 28 U.S.C. § 1332(d)(2)(A).

15.    **Plaintiff's Citizenship**.  The Complaint does not allege Plaintiff's residence or citizenship.  *See generally* Complaint.  However, Defendants are informed and believes that Plaintiff currently resides in and intends to indefinitely remain living continuously in California.  *See id.*, ¶¶ 14-15 (purporting to represent a putative class of non-exempt, hourly-paid employees "who reside in California"); *id.*, ¶¶ 19-20 (alleging "Defendants employed Plaintiff and other persons as hourly-paid or non-exempt employees within the State of California" and that "Defendants … employed Plaintiff … in the State of California, County of Los Angeles").  As such, based on Plaintiff's own allegations, Defendants are informed and believe that Plaintiff is a citizen of California for purposes of CAFA.  *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (party domiciled in state of party's address); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

16.     **Defendant CSI's Citizenship**.  As a corporation, CSI is both a citizen of its state of incorporation and where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  As shown on the Secretary of State's Business Entities Search website, CSI is a corporation organized and existing under the laws of the State of Delaware with its corporate headquarters and principal place of business in Virginia.  *See* URL at https://businesssearch.sos.ca.gov (using "Corporation Name" search for "Centerra Services International").  At its corporate headquarters in Virginia, CSI's officers direct, control and coordinate its activities and the majority of its executive and administrative functions are performed there.  Thus, CSI was and is a citizen of the State of Delaware and Commonwealth of Virginia for the purpose of determining minimum diversity jurisdiction.[1]  28 U.S.C. § 1332(d)(2).

17.     **Defendant CGL's Citizenship**.  A limited liability company ("LLC"), like CGL, is an unincorporated entity.  *See  Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021 (11th Cir. 2004).  For purposes of CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10).  As shown on the California Secretary of State's Business Entities Search website, CGL is a LLC organized and existing under the laws of the State of Delaware with its corporate headquarters and principal place of business in Virginia.  *See* URL at https://businesssearch.sos.ca.gov (using "LP/LLC Name" search for "Centerra Group").  At its corporate headquarters in Virginia, CGL's officers direct, control and coordinate its activities and the majority of its executive and administrative

---

[1] If this Court's jurisdiction is challenged, either by Plaintiff or *sua sponte*, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to present additional information regarding CSI's citizenship to demonstrate the existence of the requisite CAFA diversity between the parties.

functions are performed there.  Thus, CGL was and is a citizen of the State of Delaware and Commonwealth of Virginia for the purpose of determining minimum diversity jurisdiction.[2]  28 U.S.C. § 1332(d)(2).

18.  **Defendant WSI**.  WSI is not an existing or identifiable legal corporation, limited liability company, unincorporated association, or limited partnership, or other entity type.  Indeed, a California Secretary of State Business Search does not return any results for WSI (https://businesssearch.sos.ca.gov/).  Rather, WSI's corporate name was relinquished and changed to "G4S Government Solutions, Inc." (*i.e.*, Defendant G4S).  *See* Amended Statement of Foreign Corporation (Aug. 26, 2011), available at https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=00433537-14115382.  Thus, to the extent WSI's citizenship is even relevant (given that there already exists minimal diversity between Plaintiff and either CGL or CSI), it is properly disregarded for purposes of this removal.  *See, e.g.*, *Lurie v. Konica Minolta Bus. Sols. U.S.A.*, 2016 WL 1408056, at *2 (C.D. Cal. Apr. 11, 2016) (Klausner, J.) (disregarding non-existent corporate entity defendant in determining diversity).[3]

19.  **Defendant G4S**.  Defendant G4S is not an independent or currently-existing entity.  To that point, as shown on the Florida Division of Corporation's entity name search website, G4S was "converted" into CGL in 2014.[4]  Thus, to the extent

---

[2] If this Court's jurisdiction is challenged, either by Plaintiff or *sua sponte*, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to present additional information regarding CGL's citizenship to demonstrate the existence of complete diversity between the parties.

[3] *See also, e.g.*, *Nickerman v. Remco Hydraulics Inc.*, 2006 WL 2329516, at *4 & n.6 (N.D. Cal. Aug. 9, 2006) (finding citizenship of "dissolved defector" corporation with no assets was properly disregarded for purposes of diversity jurisdiction); *Stonybrook Tenants Ass'n, Inc. v. Alpert*, 194 F.Supp. 552, 559-60 (D. Conn. 1961) (corporation without "living, active existence" only a nominal party whose citizenship was properly disregarded for purposes of diversity jurisdiction); *Dream Team Holdings LLC v. Alarcon*, 2016 WL 9343158, at *3 (D. Ariz. Oct. 7, 2016) ("It should go without saying that a nonexistent entity does not have standing to bring suit, and therefore should not be considered for purposes of determining diversity jurisdiction.").

[4] *See* Certification of Conversion For Florida Profit Corporation Into "Other Business Entity" (Dec. 4, 2014), available at the following URL:

G4S's citizenship is even relevant (given that there already exists minimal diversity between Plaintiff and either CGL or CSI), it is properly disregarded for purposes of this removal.[5]  *See supra* ¶ 18 & n.3.  In any event, as shown on the California Secretary of State's Business Entities Search website, G4S was a corporation organized and existing under the laws of the State of Florida with its corporate headquarters and principal place of business in State of Florida.  *See* URL at https://businesssearch.sos.ca.gov (using "Corporation Name" search for "G4S Government Solutions, Inc.").  At its corporate headquarters in Florida, G4S's officers direct, control and coordinate its activities and the majority of its executive and administrative functions are performed there.  Thus, G4S was and is a citizen of the State of Florida for the purpose of determining minimum diversity jurisdiction.[6]  28 U.S.C. § 1332(d)(2).

20.     Accordingly, *none* of Defendants were or are a citizen of the State of California.  Rather, CSI and CGL were and are citizens of the State of Delaware and the Commonwealth of Virginia for the purpose of determining jurisdiction, while Plaintiff was and is a citizen of the State of California.  *See* 28 U.S.C. § 1332(d)(10).  Thus, the minimum diversity requirement under CAFA is satisfied.  28 U.S.C. § 1332(d)(2).

## C.     THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

21.     Defendants allege herein based on the following calculations that the

---

http://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5C2014%5C1211%5C65740326.Tif&documentNumber=238799.

[5] G4S is listed as "inactive" on the Florida Division of Corporation's entity name search website.  *See* http://search.sunbiz.org/Inquiry/CorporationSearch/ByName ("Entity Name" searched "G4S Government Solutions").  Additionally, as shown on the California Secretary of State's Business Entities Search website, in December 2014, G4S surrendered its right to do business in California.  *See* https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=00433537-18571032.

[6] If this Court's jurisdiction is challenged, either by Plaintiff or *sua sponte*, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to present additional information regarding G4S's citizenship to demonstrate the existence of complete diversity between the parties.

amount in controversy exceeds $5,000,000 for purposes of establishing subject matter jurisdiction under CAFA.  Defendants' allegations and calculations are not admissions of liability or damages with respect to any aspect of this case, or to the proper legal test(s) applicable to Plaintiff's allegations, or whether a class action is proper.  *See LaCrosse v. Knight Truck & Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. Jan. 8, 2015) ("'Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and trial.'") (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015)).

22.  Consistent with Fed. R. Civ. P. 8(a), a removing defendant's notice of removal need only contain plausible allegations to demonstrate the amount in controversy.  Evidentiary submissions are ***not required*** unless and until the removing defendant's allegations are contested by the plaintiff or questioned by the Court:

> In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.

*Dart Cherokee*, 574 U.S. at 89.  This standard applies to complaints like the Complaint in this action, which does not allege or seek a specific amount of damages:

> When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy … the Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal

*Ibarra*, 775 F.3d at 1197-98 (citing *Dart Cherokee*, 574 U.S. at 89-90).

23.  A plaintiff's complaint is a court's "first source of reference in determining the amount in controversy."  *LaCrosse*, 775 F.3d at 1202 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).  Here, in determining the amount in controversy for purposes of removal, the ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint—not what a court or jury might later

**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION**

determine to be the actual amount of damages, if any.  *See, e.g.*, *Ibarra*, 775 F.3d at 1198 n.1 (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are in controversy," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal"); *St. Paul Mercury*, 303 U.S. at 291 ("the status of the case as disclosed by the complaint is controlling in the case of a removal"); *Scherer v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint"); *see also, e.g.*, *Wilder v. Bank of Am.*, 2014 WL 6896116, at *4 (C.D. Cal. Dec. 5, 2014) (Morrow, J.) (determining amount in controversy requires that court assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint because the ultimate inquiry is what amount is put "in controversy" by the complaint, not what a defendant will actually owe).

24.     Plaintiff brings this action on behalf of her and a putative class defined as:

> All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of [the] Complaint to final judgment and who reside in California.

> (Subclass A) All class members who were subject to Defendants' practice of rounding time recorded for compensation of regular and overtime wages.

> (Subclass B) All class members who were subject to Defendants' policy to require its hourly paid or non-exempt employees to remain on the work premises during rest breaks.

Complaint, ¶ 15.

25.     Plaintiff and the putative class members she seeks to represent ("PCMs") purport to seek, *inter alia*, compensatory damages in the amount of unpaid wages and/or overtime *and* in the amount of Plaintiff's and each PCM's hourly wage for each meal and rest period missed or taken late; liquidated damages; statutory wage and other penalties; wage statement penalties; waiting time penalties; restitution under Business

and Professions Code § 17203; pre-judgment and post-judgment interest at the maximum rate allowed by law; injunctive relief; and "reasonable attorneys' fees and costs of suit" in connection with each cause of action alleged. *Id.* at pp. 23-28 (Prayer for Relief, ¶¶ 1-58).

26.   CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the ***aggregate*** amount in controversy for all class members exceeds five million dollars ($5,000,000.00).  *See* 28 U.S.C. § 1332(d).  Here, the allegations in Plaintiff's Complaint and the claimed damages and penalties exceed the jurisdictional minimum, even without considering the amounts in controversy with respect to any non-exempt employees of the other named defendant entities, including CGL, *except* with respect to Plaintiffs' inaccurate wage statement claim.

### Size of the Purported Class

27.   According to the Complaint, "[t]he class members are so numerous that joinder of all class members is impracticable."  Complaint, ¶ 17.a.  Indeed, during the four-year period preceding service of the Complaint (*i.e.*, February 24, 2017 to March 29, 2021),[7] Defendants CSI and CGL employed more than 100 individuals as non-exempt employees in California.  *See* discussion *infra*.  Therefore, the aggregate membership of the proposed class is *at least* 100 as required under CAFA.  *See* 28 U.S.C. § 1332(d)(5)(B).

### CAFA Amount in Controversy

28.   The claims of the individual putative class members in a "class action" are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million.  *See* 28 U.S.C. § 1332(d)(6), (11).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive

---

[7] *See* ¶ 29, *infra*.

relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. 109-14, at 42. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction:

> [I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case ... Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.

S. Rep. 109-14, at 42-43.

29. CSI's payroll, employment, and operational data for those PCMs comprised of CSI's current and former employees in California who worked as non-exempt hourly employees between February 24, 2017 and March 29, 2021 (the date on which the Complaint was served on Defendants), was used and analyzed to determine the CAFA amount in controversy for purposes of this Notice of Removal.[8]  The data for that four-year period was analyzed for purposes of this Notice of Removal, and can be summarized as follows:

(a)     There are 238 PCMs who currently work or have worked for CSI as non-exempt employees in California during the four-year period preceding service of the Complaint (between February 24, 2017 and March 29, 2021);

(b)     There are 220 PCMs who separated their employment with CSI during the four-year period preceding service of the Complaint (between February 24, 2017 and March 29, 2021), while 199 PCMs separated their employment with CSI during the three-year period

---

[8] If challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to rely on additional data and/or claims for which no calculations have yet been proffered in calculating the amount in controversy.

**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION**

preceding service of the Complaint (between February 24, 2017 and March 29, 2021);

(c)  PCMs worked an aggregate of 95,610 workdays for CSI during the four-year period preceding service of the Complaint (between February 24, 2017 and March 29, 2021);

(d)  During the four-year period between February 24, 2017 and March 29, 2021, PCMs worked an average of 8.13 hours per workday for CSI;

(e)  During the four-year period between February 24, 2017 and March 29, 2021, CSI's PCMs had an average effective hourly rate of $33.28 per hour;

(f)  There are 112 PCMs who currently work or have worked for CSI as non-exempt employees in California during the one-year period preceding service of the Complaint (*i.e.*, February 24, 2020 through March 29, 2021), who were issued a total of 1,754 wages statements during that same time period.

30.  Defendant CGL's payroll, employment, and operational data for those PCMs comprised of CGL's current and former employees in California who worked as non-exempt hourly employees from between February 24, 2017 and March 29, 2021, was used and analyzed to determine the CAFA amount in controversy for purposes of this Notice of Removal.[9]  The data for that four-year period was analyzed for purposes of this Notice of Removal, and can be summarized in relevant part as follows:

(a)  There are 901 PCMs who currently work or have worked for CGL as non-exempt employees in California during the four-year period preceding service of the Complaint (between February 24, 2017 and March 29, 2021); and

---

[9] If challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to rely on additional data and/or claims for which no calculations have yet been proffered in calculating the amount in controversy, including with respect to the ***nine*** other claims asserted against CGL for which Defendants have not proffered an amount in controversy for purposes of this Notice of Removal.  *See infra.*

**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION**

1

2

3

4

    (b)    There are 422 PCMs who currently work or have worked for CGL as non-exempt employees in California during the one-year period preceding service of the Complaint (between February 24, 2020 and March 29, 2021), who were issued a total of 9,277 wage statements during that same time period.

5

### *First and Fourth Causes Of Action: Failure to Pay Overtime and Minimum Wages*

6

    31.    In support of her First and Fourth Causes of Action[10] for failure to pay

7

overtime and minimum wages, Plaintiff alleges that "Defendants … failed to

8

compensate [her and other PCMs] for all hours worked ..."  Complaint, ¶ 21.[11]  She

9

further alleges that "Defendants engaged in a pattern and practice of wage abuse

10

against their hourly-paid or non-exempt employees within the State of California.  This

11

pattern and practice [allegedly] involved, *inter alia*, failing to pay them for all regular

12

and/or overtime wages earned ...."  *Id.*, ¶ 27.  She also alleges that "Defendants knew

13

or should have known that [she and other PCMs] were entitled to receive certain wages

14

for overtime compensation and that they were not receiving accurate overtime

15

compensation for all overtime hours worked" and that "Defendants knew or should

16

have known that Plaintiff [and other PCMs] were entitled to receive at least minimum

17

wage for compensation and that they were not receiving at least minimum wage for all

18

hours worked."  *Id.*, ¶¶ 28, 32.

19

    32.    In further support of her First Cause of Action for failure to pay overtime

20

wages, Plaintiff alleges that, "*[d]uring the relevant time period*, Defendants failed to

21

pay overtime wages to Plaintiff and [the other PCMs] for all overtime hours worked."

22

23

24

25

26

[10] Plaintiff's Tenth Cause of Action seeks restitution of the same allegedly unpaid overtime and minimum wages under the UCL, which is subject to a four-year limitations period.  Complaint, ¶¶ 116, 119 ("Plaintiff and the other class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences *four years* preceding the filing of this Complaint, an award of attorneys' fees ... and an award of costs.").

27

28

[11] Plaintiff also appears to allege a "practice" of "rounding time recorded for compensation of regular and overtime wages"; however, there are no allegations in the Complaint regarding such a practice.  Complaint, ¶ 15.

14

**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION**

*Id.*, ¶ 39 (emph. added).  She further alleges that she and other PCMs "were required to work more than eight (8) hours *per day* and/or forty (40) hours *per week* without overtime compensation for all overtime hours worked."  *Id.* (emph. added); *id.*, ¶ 54 ("During the relevant period, Plaintiff and the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week.").  She contends that, "[d]uring the relevant period, Defendants intentionally and willfully failed to pay overtime wages to Plaintiff" and other PCMs.  *Id.*, ¶ 55.[12]  Based thereon, Plaintiff seeks to recover, on behalf of herself and other PCMs, "unpaid overtime compensation, as well as interest, costs, and attorneys' fees."  *Id.*, ¶ 57.

33.     In further support of her Fourth Cause of Action for failure to pay minimum wages, Plaintiff contends that, "*[d]uring the relevant time period*, Defendants failed to pay Plaintiff [and other PCMs] at least minimum wages for *all hours worked*."  *Id.*, ¶ 41 (emph. added); *see also id.*, ¶ 80 ("During the relevant time period, Defendants failed to pay minimum wage to Plaintiff and the other class members as required ....");  *id.*, ¶ 47 ("During the relevant time period, Defendants failed to properly compensation Plaintiff and [other PCMs] pursuant to California law ....").  Based thereon, Plaintiff seeks to recover, on behalf of herself and other PCMs, "the unpaid balance of their minimum wage compensation as well as interest, costs, and attorney's [*sic*] fees, and liquidated damages in an amount equal to the wages unlawful unpaid and interest thereon."  *Id.*, ¶ 81; *see also id.*, ¶ 83 (seeing liquidated damages).  She also seeks to recover statutory wage penalties pursuant to Cal. Lab. Code § 1197.1.  *Id.*, ¶ 82.

**A.     UNPAID OVERTIME AND MINIMUM WAGES**

34.     In light of Plaintiff's allegations that she and the PCMs worked more than eight hours **"*per day*"** during the four-year limitations period, that Defendants did not

---

[12] *See also* Complaint, ¶ 47 ("During the relevant time period, Defendants failed to properly compensation Plaintiff and [other PCMs] pursuant to California law ....").

pay minimum wage during the four-year limitations period, that each has been damaged by a "pattern and practice of wage abuse," and the fact that CSI PCMs *alone* worked, on average, 8.13 hours per day during the four year period preceding service of the Complaint, any unpaid time worked by PCMs should be calculated at the overtime rate for that same period.[13]

35.     For purposes of calculating the amount in controversy for removal, based on Plaintiff's allegations in the Complaint, Defendants have reasonably and conservatively assumed that each of the CSI PCMs *alone* will claim to have worked *at least* 12 minutes (0.20 hours) of unpaid overtime *and* straight time per day.   This assumption is wholly reasonable given the Complaint's allegations.   *See, e.g.*, *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *6 (C.D. Cal. May 9, 2018) (Fitzgerald, J.) (finding assumption of one hour per week, or 12 minutes per day, reasonable where plaintiff alleged defendant rounded all employees' time); *Altamirano v. Shaw Indus.*, 2013 WL 2950600, at *10 (N.D. Cal. June 14, 2013) (accepting assumption of six minutes of unpaid time per day for purposes of amount in controversy calculations as "rather conservative" where plaintiff alleged the defendant rounded all employees' time).[14]

36.     Based on the foregoing, CSI calculates the amount in controversy for the alleged unpaid overtime and minimum wages *for CSI PCMs only* as follows:

---

[13] *See, e.g.*, *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (facts alleged in the complaint "are to be taken as true for purposes of calculating the amount in controversy").

[14] If challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy, or employee data for CGL.

16

| Average Hourly Overtime Rate (Average Effective Hourly Rate [$33.28] x 1.5) | | Off-the-Clock Hours Per Day Worked | | Total Workdays | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $49.91 | x | 0.20 | x | 95,610 | = | **$954,570.24** |

37.     Therefore, the amount in controversy for Plaintiff's First and Fourth Causes of Action for unpaid overtime and minimum wages is **$954,570.24** (without taking into consideration liquidated damages).  Notably, the amount in controversy on these claims and Plaintiff's other claims as discussed below are *conservatively* calculated given that they are calculated only up to the date the Complaint was served, even though they can properly be calculated to include relief that could be obtained through the end of trial, and particularly given that they ***do not*** include any sums for employees working for CGL.  *See, e.g.*, *Chavez*, 888 F.3d 413 at 414-15, 417-18.

## B.     LIQUIDATED DAMAGES ON UNPAID MINIMUM WAGES CLAIM

38.     On her Fourth Cause of Action for failure to pay minimum wages, Plaintiff expressly seeks liquidated damages pursuant to Cal. Labor Code § 1194.2, which provides that liquidated damages may be awarded "in an amount equal to the wages unlawfully unpaid ..."  Cal. Lab. Code §1194.2; *see also* Complaint, ¶ 83 ("Pursuant to California Labor Code section 1194.2, Plaintiff and the other class members are entitled to recovery liquidated damages in an amount equal to the wages unlawful unpaid and the interest thereon."); *id.*, p. 25 (Prayer for Relief, ¶ 28).

39.     Thus, based on Plaintiff's pursuit of liquidated damages on her minimum wage claim, the amount in controversy on her unpaid wages claims properly includes an additional amount equal to the number of purported off-the-clock hours for which Plaintiffs and other PCMs were not paid at least minimum wage—which, for purposes of this Notice of Removal, Defendants have calculated at the ***lowest*** minimum wage during the four-year period preceding service of the Complaint (*i.e.*, $10.50 per

hour)[15]—calculated as follows:

| Lowest Minimum Wage Hourly Rate | | Off-the-Clock Hours Per Day Worked | | Total Workdays | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $10.50 | x | 0.20 | x | 95,610 | = | **$200,781.00** |

## C.   TOTAL AMOUNT IN CONTROVERSY ON UNPAID WAGES CLAIMS

40.    Accordingly, the *total* amount in controversy for Plaintiff's First and Fourth Causes of Action, including allegedly unpaid wages and liquidated damages, is *at least* **$1,155,351.24** [$954,570.24 + $200,781.00], without calculating or including any sums for non-exempt employees working for Defendant CGL.

### *Second Cause of Action: Failure to Provide Meal Periods*

41.    In support of her Second Cause of Action for failure to provide meal periods or to pay meal period premiums,[16] Plaintiff alleges that "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California.   This pattern and practice [allegedly] involved, *inter alia*, failing to pay them ... for missed meal periods and rest breaks in violation of California law."   Complaint, ¶ 27.   She further alleges that "Defendants

---

[15] The use of the *lowest* **state** minimum wage results in a conservative and dramatically *underestimated* liquidated damages amount in controversy considering that the state minimum wage is presently $13.00 per hour and has been more $10.50 or more per hour since at least January 1, 2017.   Furthermore, the minimum wage in the County of Los Angeles, which was at all times where Plaintiff alleges she worked, is presently $15.00 per hour, and has been $10.50 or more since at least July 1, 2016. Therefore, if challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to rely on other, higher, minimum wage rates within the State of California and/or the County of Los Angeles in calculating the amount in controversy, or employee data for CGL.

[16] Plaintiff's Tenth Cause of Action seeks restitution of the same allegedly unpaid overtime and minimum wages under the UCL, which is subject to a four-year limitations period.   Complaint, ¶¶ 116, 119 ("Plaintiff and the other class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences *four years* preceding the filing of this Complaint, an award of attorneys' fees ... and an award of costs.").

knew or should have known that [she] and other [PCMs] were entitled to receive *all* meal periods or payment for one additional hour of pay at [her[ and the other [PCMs'] regular rate of pay when a meal period was missed, and they did not receive *all* meal periods or payment of one additional hour of pay and [their] regular rate of pay when a meal period was missed." *Id.*, ¶ 30.  She also alleges that, "[d]uring the relevant time period, Defendants failed to provide all uninterrupted meal and rest periods to Plaintiff and [other PCMs]." *Id.*, ¶ 40.

42.    In further support of her Second Cause of Action, Plaintiff alleges that, "[d]uring the relevant period, [she] and [other PCMs] who were scheduled to work for a period of time no longer than six (6) hours, and who did not waive their legally-mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an interrupted meal period of not less than thirty (30) minutes and/or rest period." *Id.*, ¶ 63.  She further alleges that, "[d]uring the relevant period, [she] and [other PCMs] who were scheduled to work for a period of time in excess of six (6) hours were required to work for periods longer than five (5) hours without an interrupted meal period of not less than thirty (30) minutes and/or rest period." *Id.*, ¶ 64.  She contends that, "[d]uring the relevant time period, Defendants ... required Plaintiff and [other PCMs] to work during meal periods and failed to compensate [the] the full meal period premium for work performed during meal periods." *Id.*, ¶ 65; *see also id.*, ¶ 66.

43.    Based on the foregoing, Plaintiff seeks to recover on behalf of herself and the putative class "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period was not provided." *Id.*, ¶ 68; *see also id*. at p. 24 (Prayer for Relief, ¶¶ 10-16).

44.    Given the Complaint's allegations, Defendants could reasonably assume that each of the CSI PCMs will claim to have not been provided nor paid for *at least one* non-compliant meal break *each day* they worked during the four-year period prior

to service of the Complaint.[17]  Indeed, Defendants' data establishes that CSI PCMs were entitled to *at least* one meal period each workday during the relevant period because they averaged 8.13 hours per workday.  However, for purposes of calculating the amount in controversy for this removal, Defendants *conservatively* assume that Plaintiff and the CSI PCMs **only** will claim to have experienced just *one* meal break violation only once every workweek (*i.e.*, a 20% violation rate) during the four-year period preceding service of the Complaint.

45.    Therefore, based on CSI's above-summarized data, which shows that the PCMs worked at least 95,610 aggregate days during the four-year period prior to service of the Complaint (*i.e.*, February 24, 2017 through March 29, 2021), and were paid an average effective hourly rate of $33.28 during that time period, Defendants *conservatively* calculate the amount in controversy on Plaintiff's claim for unpaid *meal break* compensation as follows:

| Average Hourly Rate | | Total Number of Workdays | | Workdays Meal Period Violation Rate | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $33.28 | x | 95,610 | x | 20% | = | **$636,380.16** |

46.    Accordingly, the amount in controversy on Plaintiff's meal break violation claim is *at least* **$636,380.16**, without calculating or including any sums for

---

[17]  *See, e.g., Archuleta v. Avcorp Composite Fabrication, Inc.*, 2018 WL 6382049, at \*4-5 (C.D. Cal. Dec. 6, 2018) (Gutierrez, J.) (finding use of 100% violation rate permissible where the complaint alleged a "consistent policy of violations" and "does not allege a more precise calculation" to dispute the violation rate proffered by the employer) (int. quot. omitted); *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, at \*5 (E.D. Cal. Apr. 30, 2007) (100% rate appropriate where plaintiff "allege[d] no facts specific to the circumstances of her or [PCMs'] allegedly missed meal and/or rest periods" and alleged only that "they were 'not always provided lawful meal periods'"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, \*4 (C.D. Cal. May 21, 2015) (King, J.) (holding that a 100% violation rate was properly utilized where the plaintiff's complaint did "not contain any allegations that suggest a 100% violate rate is an impermissible assumption").

1   non-exempt employees working for Defendant CGL.[18]

2   ### *Third Cause of Action: Failure to Provide Rest Periods*

3   47.   In support of her Third Cause of Action for failure to provide rest periods

4   or to pay rest period premiums,[19] Plaintiff alleges that "Defendants engaged in a pattern

5   and practice of wage abuse against their hourly-paid or non-exempt employees within

6   the State of California.  This pattern and practice [allegedly] involved, *inter alia*, failing

7   to pay them ... for missed meal periods and rest breaks in violation of California law."

8   Complaint, ¶ 27.  She further alleges that "Defendants knew or should have known that

9   [she] and other [PCMs] were entitled to receive *all* rest periods or payment for one

10  additional hour of pay at [her] and the other [PCMs'] regular rate of pay when a rest

11  period was missed, and they did not receive *all* rest periods or payment of one

12  additional hour of pay and [their] regular rate of pay when a meal period was missed."

13  *Id.*, ¶ 31 (emph. added).  She also alleges that, "[d]uring the relevant time period,

14  Defendants failed to provide all uninterrupted meal and rest periods to Plaintiff and

15  [other PCMs]."  *Id.*, ¶ 40.

16  48.   In further support of her Third Cause of Action, Plaintiff alleges that,

17  "[d]uring the relevant period, Defendants required [her] and [other PCMs] to work four

18  (4) or more hours without authorizing or permitting a ten (10) minute rest period per

19  each four (4) hour period worked."  *Id.*, ¶ 73.  She further alleges that, "[d]uring the

20  relevant period, Defendants willfully required Plaintiff and [other PCMs] to work

21  during rest periods and failed to pay Plaintiff and o[other PCMs] the full rest period

---

[18] If challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy, including employee data for CGL.

[19] Plaintiff's Tenth Cause of Action seeks restitution of the same allegedly unpaid overtime and minimum wages under the UCL, which is subject to a four-year limitations period.  Complaint, ¶¶ 116, 119 ("Plaintiff and the other class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences *four years* preceding the filing of this Complaint, an award of attorneys' fees ... and an award of costs.").

143254306.2

21

premium for work performed during rest periods." *Id.*, ¶ 74; *see also id.*, ¶ 76.  Based on the foregoing, Plaintiff seeks to recover on behalf of herself and the putative class "one additional hour of pay at the employee's regular rate of compensation for each work day that the rest period was not provided." *Id.*, ¶ 68; *see also id.* at p. 24 (Prayer for Relief, ¶¶ 17-22).

49.     Based on the Complaint's allegations, Defendants can reasonably assume that each of the CSI PCMs ***alone*** will claim to have not been provided and paid for at least one compliant rest break for each day they worked during the four-year period prior to service of the Complaint.[20]  Indeed, Defendants' data establishes that CSI PCMs were entitled to *at least* two rest periods each workday during the relevant period because they averaged 8.13 hours per workday.  However, for purposes of calculating the amount in controversy for removal – as it did with Plaintiff's meal break violation – Defendants *conservatively* assume that Plaintiff and the PCMs will claim to have experienced a rest break violation only once every workweek (*i.e.*, a 20% violation rate) during the four-year period preceding service of the Complaint.[21]

50.     Therefore, based on Defendants' above-summarized data, which shows that the CSI PCMs worked at least 95,610 days during the four-year period prior to service of the Complaint (*i.e.*, February 24, 2017 through March 29, 2021), and were paid an average effective hourly rate of $33.28 during that time period, Defendants *conservatively* calculate the amount in controversy on Plaintiff's claim for unpaid *rest*

---

[20] *See supra* n.17; *see also, e.g.*, *Coleman v. Estes Express Lines, Inc.*, 730 F.Supp.2d 1141, 1149-50 (C.D. Cal. 2010) (Collins, J.), *affirmed* 631 F.3d 1010 (9th Cir. 2011) (holding that the defendant properly utilized a 100% violation rate for missed meal and rest breaks when calculating the amount in controversy for CAFA removal purposes where the plaintiff had alleged that the class members "consistently" worked without meal breaks); *Mejia*, 2015 WL 2452755, at *4 (holding that a 100% violation rate was properly utilized where the plaintiff's complaint did "not contain any allegations that suggest a 100% violation rate is an impermissible assumption").

[21] If challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy, including employee data for CGL.

*break* compensation as follows:

| Average Hourly Rate | | Total Number of Workday | | Workdays Rest Period Violation Rate | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $33.28 | x | 95,610 | x | 40% | = | **$636,380.16** |

51.     Accordingly, the amount in controversy on Plaintiff's rest period violation claim is *at least* **$636,380.16**, without calculating or including any sums for non-exempt employees working for Defendant CGL.

### *Fifth Cause of Action: Waiting Time Penalties*

52.     In support of her Fifth Cause of Action for waiting time penalties under Labor Code § 203 ("Section 203"), Plaintiff alleges that she and other PCMs "were entitled to receive all wages owed to them upon discharge or resignation, including overtime and minimum wages and meal and rest period premiums, and they did not, in fact, receive all such wages owed to them at the time of their discharge or resignation." Complaint, ¶ 33; *see also id.*, ¶ 87 (alleging that Defendants failed to pay PCMs "who are no longer employed with Defendants' [*sic*] their wages").[22]  She further alleges that "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California.  This pattern and practice [allegedly] involved, *inter alia*, failing to pay them ... for missed meal periods and rest breaks in violation of California law." *Id.*, ¶ 27; *see also id.*, ¶ 42 ("During the relevant time period, Defendants failed to pay Plaintiff and the other class members all wages owed to them upon discharge or resignation.").

53.     Based on the foregoing, Plaintiff contends that she and other PCMs "are entitled to recovery from Defendants the statutory penalty wages for each day they were not paid, *up to a thirty (30) day maximum pursuant to California Labor Code*

---

[22] Plaintiff also alleges that she and other PCMs "did not receive payment of all wages, including overtime and minimum wages and meal and rest period premiums, within any time permissible under California Labor Code section 204."  Complaint, ¶ 34; *see also id.*, ¶ 43.

1  *section 203.*"  *Id.*, ¶ 89 (emph. added); *see also id.* at p. 25 (Prayer for Relief, ¶ 32)

2  (praying "[f]or statutory wage penalties ... for Plaintiff and the other class members

3  who have left Defendants' employ").   Moreover, Plaintiff's Tenth Cause of Action

4  seeks restitution of the same allegedly unpaid wages and waiting time penalties under

5  the UCL, which is subject to a four-year limitations period.  *Id.*, ¶¶ 116, 119 ("Plaintiff

6  and the other class members are entitled to restitution of the wages withheld and

7  retained by Defendants during a period that commences *four years* preceding the filing

8  of this Complaint, an award of attorneys' fees ... and an award of costs.").  Accordingly,

9  a *four-year* limitations period is properly applied to this claim.

10       54.   Notwithstanding that four-year limitations period is properly applied

11  given the Complaint's allegations, there are 199 CSI PCMs *alone* whose employment

12  terminated during the *three-year period* preceding service of the Complaint (*i.e.*,

13  February 24, 2018 through March 29, 2021).  Moreover, the PCMs' average effective

14  hourly rate during that same three-year time period was $34.02 per hour.   Further,

15  Plaintiff alleges that she and other PCMs "were required to work more than eight (8)

16  hours *per day* and/or forty (40) hours *per week* without overtime compensation for all

17  overtime hours worked."  *Id.* (emph. added); *id.*, ¶ 54 ("During the relevant period,

18  Plaintiff and the other class members worked in excess of eight (8) hours in a day,

19  and/or in excess of forty (40) hours in a week."); *see, e.g.*, *Calderon v. BKB Constr.,*

20  *LP*, 2017 WL 2618094, at *6 (N.D. Cal. June 16, 2017) ("Plaintiff's complaint alleges

21  that he worked in excess of 8 hours a day, so it is reasonable for Defendant to assume

22  that Plaintiff worked a minimum of 8 hours per day.").

23       55.   Consequently, Defendants *conservatively* calculate that the amount in

24  controversy on Plaintiff's claim for waiting time penalties is *at least* **$1,624,795.20**

25  [199 PCMs x $8,164.80 ($34.02 average hourly rate x 8 hours per day x 30 days)].[23]

26

27       [23] Based on the Complaint's allegations, Defendants' 30-day assumption is

28  reasonable.  *See, e.g., Marentes v. Key Energy Servs. Cal, Inc.*, 2015 WL 756516, at

However, this calculation is ***underestimated***, as it does not account for Plaintiff's claimed *four-year* limitations period or include any amounts in controversy on Plaintiff's claim for waiting time penalties for any former non-exempt employee who worked for Defendant CGL within the three- or four-year limitations periods. [24]

### ***Seventh Cause of Action: Failure to Provide Accurate Itemized Wage Statements***

56.     In support of Plaintiff's Seventh Cause of Action for violation of Cal. Lab. Code § 226(a), Plaintiff alleges that, "[d]uring the relevant time period, Defendants failed to provide complete and accurate wage statements to Plaintiff and [other PCMs]." Complaint, ¶ 44.  She alleges that she and other PCMs "did not receive complete and accurate wage statements from Defendants" because the wages statement, allegedly, did not "include the total number of hours worked by Plaintiff and other class members." *Id.*, ¶ 35; *see also id.*, ¶ 98.  Thus, Plaintiff alleges that wage statements issued to her and other PCMs failed to reflect that amounts that she contends should have been paid to her and other PCMs for overtime and minimum wages and missed meal and rest periods.  As noted above, she contends that such underpayments

---

*9 (E.D. Cal. Feb. 23, 2015) (where "wages are alleged to have not been paid, the full thirty days may be used for each of the [PCMs]"); *Altamirano*, 2013 WL 2950600, at *12 ("[A]s there is nothing in the complaint [] to suggest that Defendants paid employees these unpaid wages at some point … awarding penalties for the entire 30 day period is reasonable."); *see also, e.g.*, *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *4 (C.D. Cal. July 28, 2017) (Fischer, J.) (assumed 30-day period was reasonable); *Calderon*, 2017 WL 2618094, at *6 (reasonable to assume 30-day period when five months elapsed between last day of work and filing complaint). Indeed, given the Complaint's allegations, it is reasonable to assume that ***each*** PCM incurred unpaid/underpaid time in *some* amount *at least once* during the relevant time period, and a *single* incident of underpayment to each PCM is sufficient to trigger Section 203 penalties for the *entire* 30-day period for *all* PCMs.  *See, e.g.*, *Altamirano*, 2013 WL 2950600, at *12 (based on the allegations, reasonable to assume all terminated employees suffered one incident of underpayment and awarding penalties for 30-day period); *Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (accepting assumption that terminated PCMs suffered at least one violation based on allegations of "uniform policy and practice," which resulted in amounts not paid at termination).

[24] If challenged, Defendants expressly reserve and do not waive their right to supplement and/or amend the removal submissions to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy, including employee data for CGL.

1   were the result of "a pattern and practice of wage abuse." *Id.*, ¶ 27

2       57.    Based on the foregoing, Plaintiff contends that she and other PCMs are

3   "entitled to recover from Defendants the greater of their actual damages caused by

4   Defendants' failure to comply with California Labor Code section 226(a), or an

5   aggregate penalty not exceeding four thousand dollars per employee." *Id.*, ¶ 102; *see*

6   *id.* at p. 26 (Prayer for Relief, ¶¶ 39-42) (seeking "statutory penalties").

7       58.    Under Cal. Lab. Code § 226(e), an employee suffering injury as a result

8   of a knowing and intentional failure by an employer to provide accurate itemized wage

9   statements in violation of Cal. Lab. Code § 226(a) is entitled to recover the greater of

10  all actual damages *or* fifty dollars ($50) for the initial pay period in which a violation

11  occurs and one hundred dollars ($100) per employee for each violation in a subsequent

12  pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) *per*

13  *employee*.  This type of claimed violation is normally subject to a one-year statute of

14  limitations.

15      59.    Based on Plaintiff's allegations, Defendants could reasonably utilize the

16  $4,000 statutory damages limit to calculate the amount in controversy on this claim for

17  PCMs employed by CSI during the one-year limitations period (112 CSI PCMs x

18  $4,000 = $448,000).[25]  Moreover, Plaintiff's Tenth Cause of Action seeks restitution

19  of the same statutory penalties under the UCL, which is subject to a four-year

20  limitations period—application of which would *further* increase the amount in

21  controversy on this claim (238 CSI PCMs x $4,000 = $952,000).  *Id.*, ¶¶ 116, 119

22  ("Plaintiff and the other class members are entitled to restitution of the wages withheld

23  and retained by Defendants during a period that commences *four years* preceding the

24  filing of this Complaint, an award of attorneys' fees ... and an award of costs.").

25

26  _____

27      [25] *See also Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D.
    Cal. 2008) ("Where a statutory maximum is specified, courts may consider the
28  ***maximum statutory penalty available*** in determining whether the jurisdictional
    amount in controversy requirement is met." (emph. added)).

60.     Nevertheless, utilizing a more conservative approach, Defendants *conservatively* calculate the amount in controversy on Plaintiff's inaccurate wage statement claim during the *one*-year period prior to service of the Complaint (*i.e.*, February 24, 2020 through March 29, 2021) for the 112 PCMs **employed by CSI only** to be **$169,800** (or approx. $1,516.07 per PCM), calculated as follows: $5,600 [112 PCMs x $50 initial violation] + $164,200 [1,642 subsequent wage statements (1,754-112) x $100 subsequent violation].

### *Eighth Cause of Action: Recordkeeping Penalties*

61.     In support of her Eighth Cause of Action for violation of Cal. Lab. Code § 1174(d) ("Section 1174"), Plaintiff alleges that Defendants "did not keep complete and accurate payroll records."  Complaint, ¶ 36; *see also id.*, ¶ 45 ("During the relevant time period, Defendants failed to keep complete or accurate payroll records for Plaintiff and other class members.").  She further alleges that Defendants violated Section 1174 "willfully," and that she and other PCMs "have been injured" because "they were denied their legal right and protected interest, in having available, accurate and complete payroll records pursuant to [Section 1174]."  *Id.*, ¶ 107.  Based thereon, Plaintiff seeks "statutory penalties pursuant to California Labor Code section 1174.5."  *Id.* at p. 26 (Prayer for Relief, ¶ 46).

62.     Under Cal. Lab. Code § 1174.5, "[a]ny person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500)."  Thus, Defendants *conservatively* calculate the amount in controversy on Plaintiff's recordkeeping penalties, using the ostensibly applicable *one*-year period prior to service of this action (*i.e.*, February 24, 2020 through March 29, 2021), **for CSI PCMs only**, to be **$56,000** ($500 x 112 PCMs).

### ***Statutory Attorneys' Fees***

63.     Plaintiff also seeks statutory attorneys' fees in connection with the causes of action alleged in the Complaint.  *See, e.g.*, Complaint, ¶¶ 57, 81, 119 & at pp. 23-28 (Prayer for Relief, ¶¶ 8, 15, 27, 51, 56).

64.     In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal.  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").  Moreover, "a court ***must*** include **future** attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emph. added); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses ***all*** relief a court may grant on that complaint if the plaintiff is victorious." (emph. added)).

65.     Where, as here, a common fund recovery is sought, the Ninth Circuit uses a benchmark rate of 25% of the potential award as an estimate for attorneys' fees.  *See*, *e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% … as a benchmark award for attorney fees."); *Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 457 (9th Cir. 2009) (finding 25% of total award, rather than 25% of amount actually collected by the class, "was proper, and in line with Ninth circuit precedent").[26]  Accordingly, utilizing Defendants' calculations of the amount in

---

[26] *See also, e.g.*, *Hamilton v. Wal-Mart Stores Inc.*, 2017 WL 4355903, at *5-6 (C.D. Cal. Sept. 29, 2017) (Birotte, J.) (CAFA wage and hour case allowing an estimated fee award of twenty-five percent of the plaintiff's damages in calculating the amount in controversy); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D.

controversy on Plaintiff's First, Second, Third, Fourth, Fifth, Seventh, and Eighth Causes of Action and the 25% benchmark for attorneys' fees used in the Ninth Circuit, Defendants conservatively calculate the amount in controversy on Plaintiff's claim for statutory attorneys' fees would be no less than **$1,069,676.69** [($1,155,351.24 + $636,380.16 + $636,380.16 + $1,624,795.20 + $169,800.00 + $56,000.00) = $4,278,706.76) x 25%].[27]

66.     However, this calculation is ***underestimated***, as it does not account for ***any*** amount in controversy calculations, or any potential statutory attorneys' fees, for the amounts in controversy on the claims of non-exempt employees who worked for CGL that have ***not*** been included in Defendants' amount in controversy calculations for purposes of this Notice of Removal.[28]

### ***Summary of Amount in Controversy***

67.     Based on the foregoing, and without including any amount in controversy

---

Cal. Feb. 14, 2017) (Kronstadt, J.) (CAFA wage and hour case noting that "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."); *Fong v. Regis Corp.*, 2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages.").

[27] Indeed, this 25% benchmark is arguably understated, as Plaintiff's counsel in this action have sought ***more than 25%*** of the gross settlement amount in attorneys' fees in similar wage and hour cases, which settled for sums that are significantly smaller than the amount in controversy on Plaintiff's claims in this action. *See, e.g.*, *Campbell v. Best Buy Stores, L.P.*, 2015 WL 12744628, at *8 (C.D. Cal. June 23, 2015) (Kronstadt, J.) (seeking preliminary approval of an attorneys' fees award totaling one-third or 33% of the total settlement amount); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448-54 (E.D. Cal. 2013) (granting plaintiff's counsel's request for attorneys' fees in the amount of one-third of the gross settlement fund).

[28] For instance, even if Defendants were to include data for CGL PCMs on only the amount in controversy on Plaintiff's the inaccurate wage statement claim, it would add *$906,000* to the amount in controversy *on that claim alone*, calculated as follows: (422 PCMs x $50 initial violation = $21,100) + (8,855 Subsequent Wage Statements [9,277-422] x $100 subsequent violation = $885,500) = **$906,600**. Moreover, a 25% attorneys' fees benchmark would add **$226,650** in attorneys' fees on just this *one* claim as to the CGL PCMs, for a total of **$1,133,250** additional amount in controversy. Accordingly, Defendants have plainly demonstrated that the amount in controversy as to the claims Plaintiff collectively pleads against CSI and CGL exceeds $5,000,000 by any standard – and certainly under a preponderance of the evidence standard.

143254306.2

calculations on Plaintiff's Sixth or Ninth Causes of Action, and considering *only* those PCMs who worked for *CSI* (and *not* any amounts in controversy for *CGL* PCMs), the amount in controversy on Plaintiff's First, Second, Third, Fourth, Fifth, Seventh, and Eighth Causes of Action is not less than **$5,348,383.45**, which exceeds the $5,000,000 CAFA threshold:

| **Cause of Action / Claim** | **Amount in Controversy** |
|---|---|
| Failure to Pay Overtime and Minimum Wage (First and Fourth Causes of Action) | $1,155,351.24 |
| Failure to Provide Meal Periods (Second Cause of Action) | $636,380.16 |
| Failure to Provide Rest Periods (Third Cause of Action) | $636,380.16 |
| Waiting Time Penalties Pursuant to Labor Code § 203 (Fifth Cause of Action) | $1,624,795.20 |
| Violations of Labor Code § 226(a) (Seventh Cause of Action) | $169,800.00 |
| Violations of Cal. Lab. Code § 1174 (Eighth Cause of Action) | $56,000.00 |
| Statutory Attorneys' Fees and Costs | $1,069,676.69 |
| **TOTAL AMOUNT IN CONTROVERSY:** | **$5,348,383.45** |

68.     Defendants expressly reserve and do not waive their right to amend this Notice of Removal and/or offer evidence supporting the Court's jurisdiction over this action under CAFA or otherwise, including without limitation as to additional and/or different amounts in controversy (including by proffering amounts in controversy as to non-exempt employees of CGL), and as to traditional diversity and/or federal question jurisdiction.  Additionally, Defendants assume that the proposed class is as defined by Plaintiff in the Complaint for purposes of this Notice of Removal only, but expressly reserve and do not waive their position that the proposed class definition is improper and/or cannot be certified.

## IV.   NO CAFA EXCEPTIONS APPLY

69.    CAFA contains a number of exceptions to its grant of original jurisdiction. 28 U.S.C. §§ 1332(d)(3)-(5).  However, none of these exceptions are applicable here.

70.    The first is a discretionary exception based on the number of putative class members found in the state where the action was filed.  *See* 28 U.S.C. § 1332(d)(3).  However, the exception *only* applies where the "primary defendants are citizens of the State in which the action was originally filed."  *See id.*  Here, the action was originally filed in the Superior Court of the State of California and, as noted above, none of Defendants are a citizen of California.  Thus, this exception does not apply.

71.    Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of original jurisdiction based on the number of putative class members in the state in which the action was filed.  However, these exceptions also apply *only* where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed."  *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II), 1332(d)(4)(B).  Given that this action was originally filed in California, and none of Defendants are citizens of California, these exceptions also do not apply.

72.    Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions applicable to actions where defendants are government entities, or in which the putative class contains less than 100 members in the aggregate.  *See* 28 U.S.C. §§ 1332(d)(5)(A)-(B).  Given that Defendants are not governmental entities, and CSI's above-described data *alone* establishes that the putative class in fact *far exceeds* 100 members, these exceptions also do not apply.

## V.   TIMELINESS OF REMOVAL

73.    As set forth above, the Summons and Complaint were served on each Defendant's actual or purported respective agent for service of process on March 29, 2021.  Consequently, this Notice of Removal is timely in that it has been filed within thirty (30) days of the date of service of the Summons and Complaint on Defendants consistent with 28 U.S.C. §§ 1332(d), 1441(b), and 1446.

## VI.   NOTICE TO PLAINTIFF AND STATE COURT

74.   Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be served on Plaintiff's counsel of record:

> Edwin Aiwazian
> Lawyers for Justice, PC
> 410 West Arden Avenue, Suite 203
> Glendale, California 91203
> Telephone:  (818) 265-1020
> Facsimile:  (818) 265-1021

In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the State of California in and for the County of Los Angeles.

WHEREFORE, having provided notice as is required by law, the above-entitled action should be removed to this United States District Court for the Central District of California from the Superior Court of the State of California in and for the County of Los Angeles to this Court.

DATED: April 28, 2021            McGuireWoods LLP


                              By:   /s/ Sabrina A. Beldner
                                    Sabrina A. Beldner
                                    Sylvia J. Kim
                                    Amy E. Beverlin

                              Attorneys for Defendants
                              CENTERRA GROUP, LLC, CENTERRA
                              SERVICES INTERNATIONAL, INC.,
                              WACKENHUT SERVICES, INC. and G4S
                              GOVERNMENT SOLUTIONS, INC.

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 7th Floor, Los Angeles, CA 90067.

On April 28, 2021, I served the following document(s) described as **DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Edwin Aiwazian                          *Attorney for Plaintiff*
LAWYERS for JUSTICE, PC                  *Jeannie Monarrez*
410 West Arden Avenue, Suite 203
Glendale, CA 91203

☒  **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.  (C.C.P. § 1013 (a) and 1013a(3))

☐  **BY FACSIMILE:**  I caused said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court.  The telephone number of the sending facsimile machine was (310) 315-8210.  The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list.  The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

☐  **BY OVERNIGHT DELIVERY:**  I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder.  (C.C.P. § 1013(d)(e))

☐  **BY PERSONAL SERVICE:**  I personally delivered such envelope(s) to the addressee(s).  (C.C.P. § 1011)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 28, 2021 at Los Angeles, California.

_____
Matthew Whitney

**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION**