1  Edwin Aiwazian (Cal. State Bar No. 232943)
        *edwin@calljustice.com*
2  Arby Aiwazian (Cal. State Bar No. 269827)
        *arby@calljustice.com*
3  Kenyon Harbison (Cal. State Bar No. 260416)
        *kenyon@calljustice.com*
4  Jenay Younger (Cal. State Bar No. 327627)
        *jenay@calljustice.com*
5  **LAWYERS *for* JUSTICE, PC**
   410 West Arden Avenue, Suite 203
6  Glendale, California 91203
   Telephone:   (818) 265-1020
7  Facsimile:   (818) 265-1021

8  *Attorneys for* Plaintiff

9

10

11          **UNITED STATES DISTRICT COURT**

12          **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 13  JEANNIE MONARREZ individually, and on behalf of other members of the general public similarly situated; | Case No. 2:21-cv-03596-JWH(PLAx) |
| 14 | Honorable John W. Holcomb |
| 15      Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 16      vs. | |
| 17  CENTERRA GROUP, LLC, an unknown business entity; CENTERRA SERVICES INTERNATIONAL, INC., an unknown business entity; WACKENHUT SERVICES, INC., an unknown business entity; G4S GOVERNMENT SOLUTIONS, INC., an unknown business entity; and DOES 1 through 100, inclusive, | |
| 18 | |
| 19 | Date:          July 2, 2021 |
| 20 | Time:          9:00 a.m. |
| 21 | Courtroom:   2 |
| 22      Defendants. | Complaint Filed:   February 24, 2021 |
| | Trial Date:          None Set |

23

24

25

26

27

28

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on July 2, 2021 at 9:00 a.m., or as soon thereafter as may be heard in Courtroom 2 of the George E. Brown, Jr. Federal Building and United States Courthouse, 3470 12th St., Riverside, CA 92501,[1] Plaintiff Jeannie Monarrez ("Plaintiff") will and hereby does move for an order remanding this action to the Superior Court for the County of Los Angeles.

Plaintiff moves for remand pursuant to 28 U.S.C. § 1447 on the ground that this Court does not have removal jurisdiction over this case. Defendants Centerra Group, LLC, Centerra Services International, Inc., Wackenhut Services, Inc., and G4S Government Solutions, Inc., (collectively, "Defendants") wrongly removed this action from state court pursuant to the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1332(d) ("CAFA"). This Court lacks subject matter jurisdiction because Defendants failed to prove by a preponderance of the evidence that the total amount in controversy exceeds the sum of $5,000,000 as required for CAFA jurisdiction.

Even if this Court were to find that Defendants did show the amount in controversy exceeds that figure, this case must be remanded because as alleged, and as not challenged by Defendant on removal, all of the putative class members reside in California. Plaintiff seeks remand to the Superior Court for the County of Los Angeles, where this case rightfully belongs.

//
//
//
//
//
//

---

[1] Zoom Link available on the Court's website, Webinar ID: 161 801 9947/ Passcode: 133178.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This motion is made following Plaintiff's counsel's meet and confer letter of May 24, 2021 to Defendant's counsel, as well as subsequent correspondence in the following days, pursuant to Local Rule 7-3. Plaintiff's Motion is based on this Notice, the Memorandum of Points and Authorities, any documents Plaintiff may subsequently file, all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.

Dated: May 28, 2021

**LAWYERS *for* JUSTICE, PC**

/s/ Jenay Younger

Jenay Younger
*Attorneys for* Plaintiff

# TABLE OF CONTENTS

*I.*    *INTRODUCTION* ................................................................. *1*

*II.*    *STATEMENT OF FACTS* ..................................................... *2*

*III.*    *LEGAL STANDARDS* ............................................................ *4*

     A.    The Case Must Be Remanded if There is "Any Doubt" ..................... 4

     B.    The Heavy Burden Defendants Must Meet to Justify Diversity Jurisdiction ........................................................................ 4

     C.    Only the Complaint and Summary Judgment Type Evidence May Be Used to Prove the Amount in Controversy ........................... 5

*IV.*    *THIS CASE MUST BE REMANDED UNDER THE ABOVE LAW* ............... *6*

     A.    Defendants Cannot Prove by a Preponderance of the Evidence that the Amount in Controversy Exceeds $5 Million ........................ 6

         1.    Defendants' Calculation of Overtime and Minimum Wages Claims are Unreasonable ...................................... 6

         2.    Defendants' Calculation of Minimum Wages Claims is Unreasonable ........................................................... 8

         3.    Defendants' Calculations for Unpaid Meal and Rest Period Premiums Are Baseless ................................... 9

         4.    Defendants' Calculation of Waiting Time Penalties Is Inflated and Unsupported ..................................... 13

         5.    Defendants' Calculation for Wage Statement Violations is Improper and Unsubstantiated ............................... 15

*V.*    *CONCLUSION* ...................................................................... *16*

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO
28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
**CASE NO. 2:21-CV-03596-JWH(PLAX)**

**Cases**

*Arias v. Residence Inn by Marriot*, 936 F.3d 920 (9th Cir. 2019) ......................... 14

*Boggs v. Lewis*, 863 F.2d 662 (9th Cir. 1988) ...................................................... 9

*Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208 (3rd Cir. 1997) ...................... 9

*Cisneros v. Lerner N.Y., Inc.*, 2016 U.S. Dist. LEXIS 98302 (C.D. Cal. July 25, 2016) ...................................................................................................................... 19

*Conrad Associates v. Hartford Accident & Indemnity Co.,* 994 F.Supp. 1196 (N.D. Cal. 1998) ............................................................................................................... 10

*Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547 (2014) ........... 9

*Duncan v. Stuetzle*, 76 F.3d 1480 (9th Cir. 1996) ................................................. 9

*Emrich v. Touche Ross & Co.*, 846 F.2d 1190 (9th Cir. 1988) ............................... 9

*Garibay v. Archstone Communities, LLC*, 2013 U.S. App. LEXIS 17923 (9th Cir. 2013) ...................................................................................................................... 18

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) ............................................ 9, 10

*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193 (9th Cir. 2015) ....................... passim

*International Primate Protection League v. Administrators of Tulane Ed. Fund*, 500 U.S. 72 (1991) ......................................................................................................... 9

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993 (C.D. Cal. 2002) ...................................................................................................... 9

*Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F. 3D 994 (9th Cir. 2007)........ 18, 19, 20

*Mix v. Allstate Ins. Co.*, 2000 U.S. Dist. LEXIS 14260 (C.D. Cal. Apr. 19, 2000) 10

*Nolan v. Kayo Oil Co.*, 2011 U.S Dist. LEXIS 72256 (N.D. Cal. Jul. 6, 2011) ..... 13

*Ray v. Nordstrom, Inc.*, 2011 U.S. Dist. LEXIS 146657 (C.D. Cal. Dec. 9, 2011) 13

*Rodriguez v. AT&T Mobility Servs. LLC*, 728 F. 3d 975 (9th Cir. 2013) ............... 10

*Ruby v. State Farm Gen. Ins. Co.*, 2010 U.S. Dist. LEXIS 88812 (N.D. Cal. Aug. 4, 2010)...................................................................................................................... 16

*Salter v. Quality Carriers, Inc.* 974 F.3d 959 (9th Cir. 2020) ............................... 10

*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996)..................... 10

*Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373 (9th Cir. 1997).......... 10, 20

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

v

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND PURSUANT TO
28 U.S.C. § 1447; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
**CASE NO. 2:21-CV-03596-JWH(PLAX)**

*Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815 (9th Cir. 1985) ............................9

*Vigil v. HMS Host USA, Inc.*, 2012 U.S. Dist. LEXIS 112928 (N.D. Cal. Aug. 10, 2012) ..................................................................................................................13

*Winfrey v. TIC - The Indus. Co.*, 2016 U.S. Dist. LEXIS 53067 (C.D. Cal. Apr. 19, 2016) ..................................................................................................................12

**Statutes**

28 U.S.C. § 1332 ..................................................................................................10

28 U.S.C. § 1441 ....................................................................................................7

Cal. Bus. & Prof. Code § 17200 ............................................................................7

Cal. Lab. Code § 1194 ...........................................................................................6

Cal. Lab. Code § 1197 ...........................................................................................6

Cal. Lab. Code § 1197.1 ........................................................................................6

Cal. Lab. Code § 1198 ...........................................................................................6

Cal. Lab. Code § 201 .............................................................................................6

Cal. Lab. Code § 202 .............................................................................................6

Cal. Lab. Code § 226.7 ..........................................................................................6

Cal. Lab. Code § 2802 ...........................................................................................6

Cal. Lab. Code § 510 .............................................................................................6

Cal. Lab. Code § 512 .............................................................................................6

**LAWYERS *for* JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

# I.  INTRODUCTION

Defendants' removal lacks evidentiary support. Despite having access to employment records for the putative class, Defendants fail to demonstrate that their amount in controversy calculations are based on actual figures or even rational assumptions. Without any evidence regarding the number of meal period violations, the number of rest period violations, the number of waiting time penalties, the number of inaccurate wage statements, the amount of unpaid overtime, or the amount of unreimbursed business expenses, Defendants simply calculated the average hours putative class members ("PCMs") worked per day and assumed that each PCM worked 12 minutes of overtime and 12 minutes off-the-clock each day. Similarly, Defendants assume a 100% violation rate for waiting time penalties, and Defendant assumes a 100% violation rate for inaccurate pay stubs.

Plaintiff's complaint does not support these assumptions. Nor do Defendants present any evidence of their own to provide even a rational basis in support of these assumptions. Defendants' Notice of Removal is in fact based on a misinterpretation of case law, a misreading of relevant statutes, and on assumptions conjured from thin air. Moreover, prior rulings from this Court do not dictate his ruling on the present motion, as the Court rules on each case independently and Defendants' notice of removal is unique in each case.

The reality is that the Ninth Circuit Court of Appeals has made it clear that, in a removal jurisdictional dispute, a removing party must support all assertions about the amount in controversy with summary-judgment-type evidence. In contrast, Defendants' calculations rely on blank assumptions and conjecture. During the meet and confer process pertaining to this motion, Defendants' proffered what they said would be a declaration that is indicative of how Defendants' will oppose this motion. This proposed declaration does indeed

contain many numbers, relating to workweeks, employees, etc., but <u>nothing</u> that could provide reasonable support for the <u>violation rates</u> that Defendants are claiming. It seems possible that in prior cases put before this Court,[2] counsel for the Plaintiffs did not sufficiently make clear that Defendants are bombarding the Court with numbers that may seem impressive, but which are completely irrelevant to the key issue at hand: how many violations per week, or per day, are reasonable for Defendants to assume based upon Plaintiff's complaint.

Defendants have not met their burden, and it seems very likely, based upon the meet and confer process, that upon challenge by Plaintiff, Defendants will continue to fail to meet their burden to establish that the amount in controversy requirement is satisfied, because they cannot provide rational and reasonable support for the number of violations they assume occurred. Federal Court jurisdiction is limited, and federal judges guard the prerogatives of the states and their court systems. As Defendants have failed and will fail to sufficiently prove that the amount in controversy exceeds $5,000,000, Plaintiff respectfully requests that this Court remand this case to the Superior Court of the County of Los Angeles, where it belongs.

## II.    STATEMENT OF FACTS

Plaintiff filed this action on February 24, 2021 in the California Superior Court for the County of Los Angeles. (Dkt. No. 1, Exh. A.) Plaintiff's Complaint contained ten causes of action for (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

---

[2] See *Vasquez v. RSI Home Products, Inc., et al.*, C.D. Cal. Case No. 8:20-cv-01494-CJC-JDE; See also *Hines v. Constellis Integrated Management Services, et al.*, C.D. Cal. Case No. 2:20-cv-06782-JWH-PLA.

**LAWYERS** *for* **JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

Labor Code §§ 201 and 202 (final wages not timely paid); (6) violation of California Labor Code § 204 (wages not timely paid during employment); (7) violation of California Labor Code § 226(a) (non-compliant wage statements); (8) violation of California Labor Code § 1174(d) (failure to keep requisite payroll records); (9) violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses); and (10) violation of California Business & Professions Code §§ 17200, et seq. The putative class is:

> All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California.

> (Subclass A) All class members who were subject to Defendants' practice of rounding time recorded for compensation of regular and overtime wages.

> (Subclass B) All class members who were subject to Defendants' policy to require its hourly paid or non-exempt employees to remain on the work premises during rest breaks. (Dkt. No. 1, Exh. A, ¶ 15.)

Defendants removed this action on April 28, 2021. (Dkt. No. 1) On May 3, 2021, the Parties filed a joint Stipulation to Extend Defendants' Deadline to File Responsive Pleading Pending Motion to Remand (Dkt. No. 7.) Thereafter, on May 24, 2021, Plaintiff sent a letter to Defendants detailing Plaintiff's reasoning for contemplating a motion to remand. (Declaration of Jenay Younger in Support of Plaintiff's Motion to Remand Pursuant to 28 U.S.C. § 1447 ["Younger Decl."] ¶ 2, Exh. A.) Defendants responded to Plaintiff's letter with an email explaining why they contend a motion to remand is without merit, and Plaintiff indicated that it was still necessary to bring this motion. (Younger Decl. ¶ 3, Exh. B.) Now Plaintiff brings this motion to remand.

///

## III.    LEGAL STANDARDS

### A.    <u>The Case Must Be Remanded if There is "Any Doubt"</u>

A federal court may exercise removal jurisdiction over a case only if jurisdiction existed over the suit as originally brought by the plaintiffs. (28 U.S.C. § 1441.) A motion to remand lies where there is no diversity of citizenship, or the claim does not in fact "arise under" federal law. Such defects go to the court's subject matter jurisdiction and can be raised at any time. (*International Primate Protection League v. Administrators of Tulane Ed. Fund*, 500 U.S. 72, 87 (1991); *see Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 213 (3rd Cir. 1997) [remand required even where federal court previously dismissed identical action].) "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." (*Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).) Courts "strictly construe the removal statute against removal jurisdiction." (*Gaus*, 980 F.2d at 566 (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988)); *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985).) Diversity jurisdiction is determined at the instant of removal. (*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1000 (C.D. Cal. 2002)).

### B.    <u>The Heavy Burden Defendants Must Meet to Justify Diversity Jurisdiction</u>

Upon the filing of a motion to remand, the party invoking the removal statute bears the burden of establishing that federal jurisdiction exists. (*Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

"Evidence establishing the amount [in controversy] is required where, as here," Defendants' "assertion of the amount in controversy is contested by" Plaintiffs. (*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, at 1197 (9th Cir. 2015) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 554

4

(2014).) Defendants bear the burden of proving the propriety of federal court jurisdiction by "a preponderance of the evidence." (*Rodriguez v. AT&T Mobility Servs. LLC*, 728 F. 3d 975, 977 (9th Cir. 2013).) A plaintiff need only challenge the "rationality" (i.e., factual basis) of the defendant's assertions. At that point the Court decides, based on all evidence and argument, and applying the preponderance of the evidence standard, whether Defendant's assertions in the notice of removal were reasonable. (*Salter v. Quality Carriers*, *Inc.* 974 F.3d 959, 963-64 (9th Cir. 2020).)

Under this burden, a defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." (*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).) In a removal jurisdictional dispute, the defendant has not only "the burden to put forward evidence showing that the amount in controversy exceeds $5 million," but also the burden "to persuade the court that the estimate of damages in controversy is a reasonable one." (*Ibarra,* 775 F.3d at 1197.) Thus, a removing party "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." (*Id.*)

**C.    Only the Complaint and Summary Judgment Type Evidence May Be Used to Prove the Amount in Controversy**

In attempting to satisfy its burden, a defendant must offer nothing less than competent evidence. (*Gaus,* 980 F.2d at 567.) To demonstrate the requisite amount in controversy, parties may submit "summary-judgment-type evidence" relevant to the amount in controversy at the time of removal." (*Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir. 1997).) It is well-settled in the Ninth Circuit that "[a] speculative argument regarding the potential value of the [amount in controversy] is insufficient." (*Mix v. Allstate Ins. Co.*, 2000 U.S. Dist. LEXIS 14260, *3 (C.D. Cal. Apr. 19, 2000) (quoting *Conrad Associates v. Hartford*

*Accident & Indemnity Co.,* 994 F. Supp. 1196, 1198 (N.D. Cal. F¶eb. 10, 1998));
*see also Ibarra,* 775 F.3d at 1197 (a defendant "cannot establish removal
jurisdiction by mere speculation and conjecture, with unreasonable assumptions").)

## IV.    THIS CASE MUST BE REMANDED UNDER THE ABOVE LAW

### A.    Defendants Cannot Prove by a Preponderance of the Evidence that the Amount in Controversy Exceeds $5 Million

#### 1.    *Defendants' Calculation of Overtime and Minimum Wages Claims are Unreasonable.*

Defendants estimate that the amount in controversy for overtime and minimum wages claims is $954,570.24. (Dkt. No. 1, ¶ 37.)  These calculations are likewise unreasonable and totally unsupported by any evidence.

Defendants calculated this amount by "reasonably and conservatively" estimating that each CSI PCM worked at least 12 minutes of unpaid overtime and straight time every single day for four years. (*Id.* at ¶ 34-37.) Defendants provide no supporting documentation to prove to the Court and Plaintiff that such a "conservative" assumption is a reasonable let alone accurate representation of Defendants' employees' typical overtime hours (or violations thereof for non-payment).

Further, Defendants intentionally mischaracterize allegations in Plaintiff's Complaint. For example, Plaintiff states in her Complaint that she and other putative class members "were required to work more than eight (8) hours per day and/or forty (4) hours per week without overtime compensation for ***all*** overtime hours worked." (Dkt. No. 1, Exh. A, ¶ 39.) Defendants misconstrue this language and contend that Plaintiff and the PCMs allege that they "worked more than eight hours 'per day' during the four-year limitations period." (Dkt. No. 1 ¶ 34.) This intentional mischaracterization is not support for Defendants conjectured violation rates. In fact, Plaintiff's allegation that she and other putative class members were

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

not paid overtime for **all** overtime hours worked indicates that Plaintiff is not necessarily alleging that she **never** received overtime pay. Similarly, in stating that Plaintiff and other putative class members worked more than eight (8) hours per day and/or forty (4) hours per week, the words "per day" and "per week" are simply added to state the basis for an overtime claim. Obviously, if Plaintiff and the other putative class members worked more than eight hours over the span of multiple days, or over forty hours over a span of multiple weeks, those circumstances would not necessarily give rise to an overtime claim. This is just one example of the unreasonableness of Defendants "calculations."

Defendants do not cite to any documentary evidence – such as work schedules, timecards, or complaints from an employee hotline – to establish the propriety of their assumed estimate. (They do not even cite to non-documentary evidence.) Moreover, Defendants did not provide foundation in the form of any information about the lengths of any of workdays during any of the purported workweeks to justify their assumption that *every* CSI PCM worked long enough shifts even to trigger overtime *every* single day for 95,610 days.[3]

Defendants' failure to provide competent evidence is particularly inexcusable because, as the employer, Defendants have ready access to the facts, records, and information necessary to make the requisite showing under CAFA. Courts in similar circumstances has found that a one- to three-hour estimates of overtime hours worked per week was too speculative when not supported by any evidence. (*See e.g.*, *Winfrey v. TIC - The Indus. Co.*, 2016 U.S. Dist. LEXIS 53067, at *7-9 (C.D. Cal. Apr. 19, 2016) (finding Defendant's estimated violation rate of three hours of overtime per week too speculative despite plaintiff's allegation of a policy of wage abuse because Defendant had access to employment and payroll

---

[3] Defendants have not made clear exactly how many putative class members it contends are included in this aggregate number of workdays. (Dkt. No. 1, ¶ 29.)

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   records that would allow them to provide more accurate figures, "rather than mere

2   estimations."); *Ray v. Nordstrom, Inc.*, 2011 U.S. Dist. LEXIS 146657, at *8 (C.D.

3   Cal. Dec. 9, 2011) (allegation that defendant "failed to pay 'all' California hourly

4   employees at least some regular and overtime hours" did not support Defendant's

5   estimate that each class member missed one hour of regular pay and one hour of

6   overtime pay per pay period); *Nolan v. Kayo Oil Co*., 2011 U.S Dist. LEXIS

7   72256, at  12 (N.D. Cal. Jul. 6, 2011) ("Simply assuming that every

8   employee…worked at least one hour of overtime a week, without some facts or

9   evidence to support these assumptions, is insufficient to meet Defendant's

10  evidentiary burden."); *Vigil v. HMS Host USA, Inc.*, 2012 U.S. Dist. LEXIS

11  112928, at *15-16 (N.D. Cal. Aug. 10, 2012) (Defendant's assumption that each

12  class member worked one hour of overtime per week was unsupported by evidence

13  and unsupported by allegations in complaint, and did not rise to the legal certainty

14  standard).)

15      Defendants' failure to introduce these data and documents is appears to be a

16  calculated strategy to invoke CAFA jurisdiction without providing any admissible

17  evidence regarding the validity of the putative class members' claims – evidence

18  that obviously could later be used to expose Defendants' liability in this case.

19  Defendants' assumption-based estimate*s are* far too speculative to rise to the level

20  of summary judgment type evidence.  Defendants' "calculations" *are* self-serving

21  and should be disregarded.

22          ### 2.    *Defendants' Calculation of Minimum Wages Claims is*

23              *Unreasonable.*

24      Although Defendants' combine Plaintiff's First and Fourth Causes of Action

25  for unpaid overtime and minimum wage claims to "calculate" an amount in

26  controversy of $954,570.24, Defendants further "calculate" and additional $200,

27  781 for liquidated damages for Plaintiff's Fourth Cause of Action. Here again,

28                                      8

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Defendants assume that each CSI PCM worked 12 minutes of unpaid overtime each of the 95,610 days. As stated above, this assumption is unreasonable.

### 3. *Defendants' Calculations for Unpaid Meal and Rest Period Premiums Are Baseless*

Defendants estimate (i.e., assume) that each CSI PCM experienced at least one meal break violation and at least one rest break violation per workweek during the four-year period prior to service of the Complaint. (Dkt. No. 1, ¶ 44, 49.) Defendants "calculate" that the amount in controversy for unpaid meal period premiums is at least $636, 380.16 and the amount in controversy for unpaid rest period premiums is at least $636,380.16 as well (*Id.* at ¶ 46, 51.) These calculations are unsupported by any evidence whatsoever and are completely unreasonable.

A defendant's assumptions used to calculate an amount in controversy must contain "some reasonable ground underlying them." (*Arias v. Residence Inn by Marriot*, 936 F.3d 920 (9th Cir. 2019) (citing *Ibarra*, 775 F.3d at 1199).)

Here, Defendants provide no such grounds upon which to base their claim. Defendants assume one violation per workweek for each CSI PCM for meal periods (Dkt. No. 1, ¶ 44.) Defendants also assume one violation per each workweek for each CSI PCM for rest periods (*Id.* at 49.) Such violation rates are objectively unreasonable assumptions. But moreover, the assumption of 8-hour shifts that Plaintiff just made is, notably, an assumption *charitable* to Defendant. In reality Defendants failed even to lay the foundation that all of the shifts the class members worked were of sufficient length to mandate the provision of meal and rest periods at all! Nowhere in their removing papers do Defendants even attempt to address whether any of the putative class members were part-time employees and/or not entitled to meal and rest periods due to the length of their shifts. Defendants simply "calculated" that an undefined number of PCMs "worked an average of 8.13 hours per workday for CSI[.]"

In support of their assertions, Defendants fail to provide a single timecard, paystub, wage statement, work schedule, or other documents to support the propriety of their claimed meal and rest break violation rates.

Thus, Defendants' representations as to the amounts in controversy for meal and rest break premium pay are pure speculation, and must be rejected. (*See Ibarra*, 775 F.3d at 1199 (finding that "a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them.").)

Defendants, again, mischaracterize Plaintiff's allegation to form some basis for their conjectured violation rates. Plaintiff's Complaint states in relevant part:

> "During the relevant time period, Plaintiff and the other class members who were scheduled to work for a period of time in excess of six (6) hours were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or rest period." (Dkt. 1, Exh. A, ¶ 64.)
>
> "During the relevant time period, Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods." (Dkt. 1, Exh. A, ¶ 65)
>
> "Pursuant to applicable IWC Wage Order and California Labor Code section 226.7(c), Plaintiff and the other class members are entitled to recover from Defendants one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." (Dkt. 1, Exh. A, ¶ 68.)

Defendants contend that these allegations make it reasonable for Defendants to "assume that each of the CSI PCMs will claim to have not been provided nor paid for *at least one* non-compliant meal break *each day* they worked during the four-year period prior to service of the Complaint" and that calculating one violation per week is therefore conservative. (Dkt. 1 ¶ 42-44.)

Defendants are mistaken. Just as with Plaintiff's overtime claims, Plaintiff is simply stating basis for her meal and rest period claims. Plaintiff's Complaint may

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

reasonably be interpreted to mean that there was only one violation ever or that the violations occurred as Defendants suggest. However, that assumption cannot be pulled out of "thin air." (*Ibarra*, 775 F.3d at 1199.)

Courts in similar circumstances have found that an assumption of even one meal and one rest period violation *per week* is too speculative when unsupported by any evidence. (*See Armstrong v. Ruan Transp. Corp.*, 2016 U.S. Dist. LEXIS 148460, at \*14 (C.D. Cal. Oct. 25, 2016) (rejecting defendant's assumption of one meal and rest period violation per week because it failed to provide any factual support for its assumptions); *see also e.g., Smith v. Diamond Resorts Mgmt.*, 2016 U.S. Dist. LEXIS 11063, at \*5 (C.D. Cal. Jan. 29, 2016); *Weston v. Helmerich & Payne Int'l Drilling Co.*, 2013 U.S. Dist. LEXIS 132930, at \*17 (E.D. Cal. Sep. 16, 2013); *Ray v. Nordstrom, Inc.*, 2011 U.S. Dist. LEXIS 146657, at \*9 (C.D. Cal. Dec. 9, 2011); *Ruby v. State Farm Gen. Ins. Co.*, 2010 U.S. Dist. LEXIS 88812, at \*11-12 (N.D. Cal. Aug. 4, 2010).)

In *Armstrong*, the court considered whether a defendant's assumption of one meal and rest period violation per workweek for every class member was properly supported. (*Armstrong v. Ruan Transp. Corp.*, 2016 U.S. Dist. LEXIS 148460, at \*9 (C.D. Cal. Oct. 25, 2016).) The court held that defendant "failed to sustain its evidentiary burden for purposes of removal" because "Defendant did not present any facts supporting its assumption," but rather only provided "a declaration" that set forth the number of class members, average number of workdays and work hours, the frequency wage statements were issued, total hours worked, and other general information. (*Id.* at \*8-9.) That is precisely what Defendants have done here. (*See* Dkt. No. 1 ¶ 3-4.)

The *Armstrong* court noted that "[n]owhere does [the declarant] address the possible rate of meal- and rest-period violations, the number of complaints Defendant received regarding the lack of meal and rest periods, Defendant's policy

addressing how meal and rest periods are scheduled, or anything else to provide factual support for Defendant's assumption of 'one meal period and one rest period violation per workweek' for every class member." (*Armstrong v. Ruan Transp. Corp.*, 2016 U.S. Dist. LEXIS 148460, at *9 (C.D. Cal. Oct. 25, 2016).) Further, "[c]ase law supports the conclusion Defendant may not rely on statistical assumptions to prove the amount-in-controversy requirement." (*Id.* at *9.)

The *Armstrong* court also noted that taking complaint language that says "Defendant failed to provide all the legally required unpaid, off-duty meal periods" to mean that the complaint states that all meal periods were missed was "mistat[ing] the claims in Plaintiff's complaint." (*Id.*) In *Armstrong*, the Defendant attempted to use such language to claim that asserting "'one meal and rest period violation per workweek' is a 'conservative estimate' for [Defendant's] exposure." (*Id.*) In holding that Defendant's interpretation was misrepresenting Plaintiff's allegations, the court noted that such language "could also mean: (1) Defendant denied one class member one meal and rest break once per year, (2) Defendant denied a small group of class members one meal and rest period once a month . . . Hence there is no logical basis for the Court to assume" that Defendant's claim of one meal- and one rest-period violation per employee per week is what is pled in Plaintiff's complaint." (*Id.* at *7-8.) Accordingly, the court held that "[a]s the employer, Defendant[s] ha[ve] access to employment and payroll records that would allow [them] to provide more accurate figures, rather than mere estimations," and thus "Defendant failed to meet its burden by a preponderance of the evidence." (*Id.* at *13-14.) Here, Defendants fail to provide any evidence regarding their calculations. Accordingly, Defendants' meal and rest period calculations must be disregarded.

///

///

### 4. *Defendants' Calculation of Waiting Time Penalties Is Inflated and Unsupported.*

Defendants assume that the amount in controversy for waiting time penalties is at least $1,624,795.20. (Dkt. No. 1, ¶ 55.) Defendants allege that 199 employees ended their employment with CSI between February 24, 2018 and March 29, 2021. (*Id.,* ¶ 54.) However, Defendants improperly assume maximum violations for *all* of the 199 CSI PCM that ended their employment during this time. (*Id.*) This is insufficient to confer federal jurisdiction. (*Ibarra,* 775 F.3d at 1197 (noting that a defendant "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions").) The Court should not rely on Defendants' calculation when their only support for this calculation is that it is theoretically possible.

Defendants provide no evidence that <u>each</u> of the 199 CSI PCMs worked eight or more hours a day. Nevertheless, Defendants presume this is the case by calculating eight (8) hours of wages for a maximum of 30 days. (Dkt. No. 1, ¶ 55.) Moreover, Plaintiff's complaint does not allege that Defendants failed to timely pay <u>each and every</u> employee for the maximum time period of 30 days, but rather states that Defendants failed to timely pay "Plaintiff and the other class members." (Dkt. No. 1, Exh. A, ¶86.)

Defendants maximum penalties approach to waiting time penalties was rejected by the Ninth Circuit in *Lowdermilk v. U.S. Bank Nat'l Ass'n,* 479 F.3d 994 (9th Cir. 2007) (overruled on other grounds), and again in *Garibay v. Archstone Communities, LLC,* 539 Fed. Appx. 763 (9th Cir. 2013). In *Lowdermilk,* Oregon law permitted employees to recover a maximum of thirty days in penalty wages for an employer's failure to timely pay wages upon termination. (*Lowdermilk,* 479 F.3d at 1000.) The Court found that the defendant failed to meet its burden of proof

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1 │ that maximum penalties were appropriate, stating:[4]

2 │     Defendant assumes that all class members would be entitled to the

3 │     maximum damages… but provides no evidence to support this

4 │     assertion… Many employees may have been paid only a few days late

5 │     and, consequently, would be entitled to fewer days of penalty

6 │     wages… Again, absent more concrete evidence, **it is nearly**

7 │     **impossible to estimate with _any_ certainty** the actual amount in

8 │     controversy.

9 │ (*Id.* (emphasis added).) Lower courts in the Central District have also rejected

10 │ Defendant's maximum penalties calculations. (*See, e.g., Beck v. Saint-Gobain*

11 │ *Containers, Inc.*, 2016 U.S. Dist. LEXIS 124285, at *30 (C.D. Cal. Sep. 12, 2016)

12 │ (rejecting Defendant's maximum waiting time penalties calculation because

13 │ defendant failed to submit any evidence to support its assumption); *Cisneros v.*

14 │ *Lerner N.Y., Inc.*, 2016 U.S. Dist. LEXIS 98302, at *11-14 (C.D. Cal. July 25,

15 │ 2016) (rejecting Defendant's maximum waiting time penalties calculation because

16 │ Defendant failed to provide "evidence to suggest that Defendant failed to pay any

17 │ class member's wages for a period of thirty days—let alone that they failed to does

18 │ so for every class member."); *Dupre v. GM,* 2010 U.S. Dist. LEXIS 95049, at *11

19 │ (C.D. Cal. Aug. 27, 2010) (no basis for maximum penalties because defendant

20 │ failed to present evidence regarding the number of days it withheld wages or wage

21 │ statements).)

22 │     The Ninth Circuit's reasoning in *Lowdermilk* applies here. Like the

23 │ defendant in those cases, here Defendants provided the number of CSI PCMs who

24 │ separated from their employment during a three-year period, and then assumed that

25 │ Defendants waited at least thirty days after separation to tender final payment of

26 │

27 │ _____

[4] Even though the courts in *Lowdermilk* and *Garibay* applied a "legal certainty" standard, the reasoning is still applicable.

28 │

their wages. Defendants also assume that each of these putative class members are entitled to eight (8) hours worth of penalties per day without establishing that all CSI PCMs were full-time employees. Thus, Defendants provide no evidence at all to support their assumption that these employees would be entitled to the maximum amount of penalties. Accordingly, Defendants have failed to establish by a preponderance of the evidence the amount in controversy for waiting time penalties. As a result, Defendants' waiting time penalties calculation, based as it is entirely on assumptions, should be disregarded.

### 5. *Defendants' Calculation for Wage Statement Violations is Improper and Unsubstantiated.*

Defendants assume that the amount in controversy for wage statement violations is $169,800. (Dkt. No. 1, ¶ 60). Defendants further assume that the amount in controversy for Plaintiff's claim for Failure to Keep Requisite Payroll Records is $56,000. (*Id.* at ¶ 62.) Those assumed estimations are also unsubstantiated.

Defendants do not provide support for the number (as stated, 112) of employees during the one-year period or for the four-year period (as stated, 238). Importantly, Defendants also present no evidence that every single wage statement issued to these PCMs was non-compliant. (*Id.* at ¶59.) While it could be appropriate to assume maximum penalties if there was evidence that every single wage statement was deficient in some manner (e.g., lacking a category of information such as an employee's social security number or employee identification number), there is no such evidence presented here by Defendants.

Defendants do not provide any support to suggest that every single wage statement for every CSI PCM failed to state the accurate number of hours worked. As such, Defendants have not submitted "summary-judgment-type evidence" relevant to the amount in controversy, and do not meet their burden of proof that

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

maximum penalties are appropriate. (*Singer*, 116 F.3d at 377; *Lowdermilk*, 479 F.3d at 1000.) Instead, only unreasonable assumptions are proffered, which are not enough to establish proper removal. (*Ibarra*, 775 F.3d at 1197.)

As a result, Defendants' assumption-based wage statement penalty calculations are implausible and should be disregarded.

## V.    CONCLUSION

Defendants simply have not presented, and based on the meet and confer process, have no plans to present, any evidence supporting the particular rates of violation they have assumed occurred. They have not met their burden under *Ibarra* and, therefore, this case should be remanded to the Los Angeles County Superior Court.

Dated:  May 28, 2021                    **LAWYERS *for* JUSTICE, PC**


/s/ Jenay Younger
Jenay Younger
*Attorneys for* Plaintiff