**McGuireWoods LLP**
Sabrina A. Beldner, Esq. (SBN 221918)
    Email: sbeldner@mcguirewoods.com
Amy E. Beverlin, Esq. (SBN 284745)
    Email: abeverlin@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Tel:   (310) 315-8200
Fax:   (310) 315-8210

Sylvia J. Kim, Esq. (SBN 258363)
    Email:  skim@mcguirewoods.com
2 Embarcadero Center, Suite 1300
San Francisco, CA 94111
Tel.:  (415) 844-9944
Fax:  (415) 844-9922

Attorneys for Defendants
CENTERRA GROUP, LLC, CENTERRA SERVICES INTERNATIONAL, INC., WACKENHUT SERVICES, INC., and G4S GOVERNMENT SOLUTIONS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNIE MONARREZ individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CENTERRA GROUP, LLC, an unknown business entity; CENTERRA SERVICES INTERNATIONAL, INC., an unknown business entity; WACKENHUT SERVICES, INC., an unknown business entity; G4S GOVERNMENT SOLUTIONS, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO: 2:21-cv-03596-JWH-PLA<br><br>**DECLARATION OF JOHN O. BOLEN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447**<br><br>Date:        July 2, 2021<br>Time:       9:00 a.m.<br>Crtrm.:     2<br>Judge:      Hon. John W. Holcomb |

146078373.2

**DECLARATION IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

# DECLARATION OF JOHN O. BOLEN

I, JOHN O. BOLEN, declare as follows:

1.   I have personal knowledge of the facts and matters set forth in this declaration and could and would testify competently and truthfully to the same if called as a witness and placed under oath.  I am over eighteen years of age.

2.   I am the Vice President of North American Operations for Constellis, LLC ("Constellis"), and its subsidiary and affiliated entities.  In my role as Vice President of North American Operations for Constellis, I oversee all day to day operations, systems, and functions for the North America business lines of Constellis, as well as its subsidiary and affiliated entities, which include Defendants Centerra Services International, Inc. ("CSI") and Centerra Group, LLC ("CGL").

3.   In my capacity as Vice President of North American Operations, and in the normal course and scope of my duties in that role, I can and regularly do access and review personnel, payroll, timekeeping and wage records for all entities for which I have responsibility, including such records for CSI and CGL.  Specifically, I have and have had access to and have reviewed personnel, payroll, and wage records for Plaintiff Jeannie Monarrez and other individuals who are and/or were formerly employed by CSI and/or CGL in California as non-exempt, hourly-paid employees during the time period of February 24, 2017 through March 29, 2021, including, but not limited to timekeeping records, payroll data, and wage statements.  I am also familiar with and have knowledge and insight into the way in which the business records of CSI and CGL referred to in this declaration are prepared and maintained.  Specifically, employee personnel, payroll, and wage records are prepared and maintained by me, and/or employees of CSI and/or CGL who ultimately report to me

and who have a business duty to do so and possess personal knowledge of the records or events stated therein, and they are maintained in the ordinary course of CGL's and CSI's business. The entries made in such business records were made at or near the time of the occurrence of the events recorded in such records. In addition, the referenced business records are kept in a safe and secure location.

## Data and Calculations for CSI

4.  In connection with the preparation of this declaration, I have obtained, retrieved, and reviewed CSI's business information and records, including information maintained in CSI's timekeeping and payroll systems, containing timekeeping, payroll, and employment data related to Ms. Monarrez and other hourly-paid, non-exempt CSI employees who work or have worked in California during the one-, three-, and four-years periods ending on March 29, 2021 (the "CSI Employees"), and/or directed such data to be obtained, retrieved, and reviewed by individuals who ultimately report to me and who are responsible for maintaining such information and records. The timekeeping, payroll, and employment data that I have retrieved or had retrieved, obtained, and reviewed reflects, among other things, the number of days worked, number of hours worked per day or per shift, dates of employment, number of wage statements, the average hourly rates of pay in effect, and number of CSI Employees who worked for CSI during those time frames.

5.  The above-described data, information, and records were analyzed by me and/or at my direction and under my supervision and direction to determine and/or test for the following data points for the CSI Employees during the following time periods: (i) February 24, 2020 through March 29, 2021 (the "1-Year SOL Period"); (ii) February 24, 2018 through March 29, 2021 (the "3-Year SOL Period"); and (iii) February 24, 2017 through March 29, 2021 (the "4-Year SOL Period")

(collectively, the "SOL Periods"):

    (a)    The total number of the CSI Employees who were employed during the 1-Year and 4-Year SOL Periods;

    (b)    The total number of CSI Employees who separated their employment with CSI during the 3-Year and 4-Year SOL Periods, based on their last date of employment;

    (c)    The recorded hours worked per workday by CSI Employees during the 3-Year and 4-Year SOL Periods;

    (d)    The number of days each CSI Employee worked during the 3-Year and 4-Year SOL Periods, based on their dates of employment;

    (e)    The average (mean) hourly rate of pay in effect for CSI Employees during the 3-Year and 4-Year SOL Periods; and

    (f)    The number of wage statements that were issued to CSI Employees during the 1-Year SOL Period.

6.    The results of this analysis, which was performed by me and/or at my direction, under my supervision and direction, and which was subject to my personal review, and based upon data, information, and records that I retrieved or had retrieved and personally obtained and reviewed, can be summarized as follows:

    (a)    As of March 29, 2021, there were 112 CSI Employees actively employed by CSI;

    (b)    For the 1-Year SOL Period:

        i.    At least 112 CSI Employees were employed by CSI.

  ii. Those CSI Employees were issued an aggregate total of 1,754 wage statements, which number was determined by counting the total number of payroll checks, by check date, issued to them for the payment of work performed by them for CSI (i.e., not solely for non-working hours such as paid time off or sick time).

(c) For the 3-Year SOL Period:

  i. At least 218 CSI Employees were employed by CSI, and 199 of those employees separated (either voluntarily or involuntarily) from their employment during the 3-year SOL Period. The count of terminated employees is based on personnel records as verified against payroll data.

  ii. The 218 CSI Employees worked an average of 8.15 recorded hours per workday, which average (*i.e.*, mean) was determined by taking the total number of hours worked by those employees and dividing that number by the number of days worked by employees during the same period. In performing this calculation, any and all non-working hours were excluded (*i.e.*, paid time off or sick time).

  iii. The 218 CSI Employees were paid an average effective hourly rate of $34.02 per hour. The average effectively hourly rate reflects the mean (*i.e.*, the sum divided by the count) of the compensation for hours worked as paid to those employees as divided by their hours worked during the same period. In performing this calculation, any and all non-working hours and pay for such hours were excluded.

(d) For the 4-Year SOL Period:

    i. At least 238 CSI Employees were employed by CSI, and 220 of those employees separated (either voluntarily or involuntarily) from their employment during the 4-year SOL Period. The count of terminated employees is based on personnel records as verified against payroll data,

    ii. Those 238 CSI Employees worked an average of 8.13 recorded hours per workday, which average (*i.e.*, mean) was determined by taking the total number of hours worked by those employees and dividing that number by the number of days worked by employees during the same period. In performing this calculation, any and all non-working hours were excluded (*i.e.*, paid time off or sick time).

    iii. The 238 CSI Employees were paid an average effective hourly rate of $33.28 per hour. The average effectively hourly rate reflects the mean (*i.e.*, the sum divided by the count) of the compensation for hours worked as paid to those employees as divided by their hours worked during the same period. In performing this calculation, any and all non-working hours and pay for such hours were excluded.

    iv. Those employees worked an aggregate total of 95,610 workdays, which amount was determined by counting the total number of days on which each such employee recorded actual hours worked (*i.e.*, excluding paid time off or sick time).

**Data and Calculations for CGL**

7. In connection with the preparation of this declaration, I have obtained, retrieved, and reviewed CGL's business information and records, including information maintained in CGL's timekeeping and payroll systems, containing timekeeping, payroll, and employment data related to hourly-paid, non-exempt CGL employees who work or have worked in California during the one-, three-, and four-years periods ending on March 29, 2021 (the "CGL Employees"), and/or directed such data to be obtained, retrieved, and reviewed by individuals who ultimately report to me and who are responsible for maintaining such information and records. The timekeeping, payroll, and employment data that I have retrieved or had retrieved, obtained, and reviewed reflects, among other things, the number of days worked, number of hours worked per day or per shift, dates of employment, number of wage statements, the average hourly rates of pay in effect, and number of CGL Employees who worked for CGL during those time frames.

8. The above-described data, information, and records were analyzed by me and/or at my direction and under my supervision and direction to determine and/or test for the following data points for the CGL Employees during the 1-Year SOL Period, 3-Year SOL Period, and 4-Year SOL Period, which are defined above in Paragraph 5:

(a) The total number of the CGL Employees who were employed during the SOL Periods;

(b) The total number of CGL Employees who separated their employment with CGL during the 3-Year and 4-Year SOL Periods, based on their last date of employment;

    (c)    The recorded hours worked per workday by CGL Employees during the 3-Year and 4-Year SOL Periods;

    (d)    The number of days each CGL Employee worked during the 3-Year and 4-Year SOL Periods, based on their dates of employment;

    (e)    The average (mean) hourly rate of pay in effect for CGL Employees during the 3-Year and 4-Year SOL Periods; and

    (f)    The number of wage statements that were issued to CGL Employees during the 1-Year SOL Period.

9.    The results of this analysis, which was performed by me and/or at my direction, under my supervision and direction, and which was subject to my personal review, and based upon data, information, and records that I retrieved or had retrieved and personally obtained and reviewed, can be summarized as follows:

    (a)    As of March 29, 2021, there were 399 CGL Employees actively employed by CGL;

    (b)    For the 1-Year SOL Period:

        i.    At least 422 CGL Employees were employed by CGL.

        ii.    Those CGL Employees were issued an aggregate total of 9,277 wage statements, which number was determined by counting the total number of payroll checks, by check date, issued to them for the payment of work performed by them for CGL (i.e., not solely for non-working hours such as paid time off or sick time).

    (c)    For the 3-Year SOL Period:

        i.    At least 851 CGL Employees were employed by CGL, and 137 of

those employees separated (either voluntarily or involuntarily) from their employment during the 3-year SOL Period. The count of terminated employees is based on personnel records as verified against payroll data.

  ii. The 851 CGL Employees worked an average of 6.50 recorded hours per workday, which average (*i.e.*, mean) was determined by taking the total number of hours worked by those employees and dividing that number by the number of days worked by employees during the same period. In performing this calculation, any and all non-working hours were excluded (*i.e.*, paid time off or sick time).

  iii. The 851 CGL Employees were paid an average effective hourly rate of $42.43 per hour. The average effectively hourly rate reflects the mean (*i.e.*, the sum divided by the count) of the compensation for hours worked as paid to those employees as divided by their hours worked during the same period. In performing this calculation, any and all non-working hours and pay for such hours were excluded.

(d) For the 4-Year SOL Period:

  i. At least 901 CGL Employees were employed by CGL, and 184 of those employees separated (either voluntarily or involuntarily) from their employment during the 4-year SOL Period. The count of terminated employees is based on personnel records as verified against payroll data.

  ii. Those 901 CGL Employees worked an average of 6.56 recorded

hours per workday, which average (*i.e.*, mean) was determined by taking the total number of hours worked by those employees and dividing that number by the number of days worked by employees during the same period. In performing this calculation, any and all non-working hours were excluded (*i.e.*, paid time off or sick time).

  iii. The 901 CGL Employees were paid an average effective hourly rate of $42.00 per hour. The average effectively hourly rate reflects the mean (*i.e.*, the sum divided by the count) of the compensation for hours worked as paid to those employees as divided by their hours worked during the same period. In performing this calculation, any and all non-working hours and pay for such hours were excluded.

  iv. Those employees worked an aggregate total of 237,420 workdays, which amount was determined by counting the total number of days on which each such employee recorded actual hours worked (*i.e.*, excluding paid time off or sick time).

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on June 8, 2021, at Manassas, Virginia.

_____
JOHN O. BOLEN