UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNIE MONARREZ, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTERRA GROUP, LLC; CENTERRA SERVICES INTERNATIONAL, INC.; WACKENHUT SERVICES, INC.; GOVERNMENT SOLUTIONS, INC.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:21-cv-03596-JWH-PLAx<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [ECF No. 13]** |

Before the Court is the motion of Plaintiff Jeannie Monarrez to remand this action to state court.[1] The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court **DENIES** the Motion, as set forth herein.

## I. BACKGROUND

### A. Procedural Background

On February 24, 2021, Monarrez filed her Complaint commencing this putative class action in the Los Angeles County Superior Court.[3] In her Complaint, Monarrez asserts 10 claims for relief against for violation of various provisions of the California Labor Code and the California Business and Professions Code against Defendants Centerra Group, LLC ("CGL"); Centerra Services International, LLC ("CSI"); Wackenhut Services, Inc.; and G4S Government Solutions, Inc.[4] On April 28, 2021, Defendants removed the action

---

[1] Pl.'s Mot. to Remand (the "Motion") [ECF No. 13].
[2] The Court considered the following papers in connection with the Motion: (1) Defs.' Notice of Removal of Civil Action (including its attachments) (the "Notice of Removal") [ECF No. 1]; (2) Pl.'s Compl. (the "Complaint") [ECF No. 1-1]; (3) the Motion (including its attachments); (4) Defs.' Opp'n to the Motion (including its attachments) (the "Opposition") [ECF No. 14]; (5) Pl.'s Reply in Supp. of the Motion (erroneously filed as Pl.'s Mot. to Remand) (the "Reply") [ECF No. 15]; (6) Pl.'s Objs. to Defs.' Evidence (the "Evidentiary Objections") [ECF No. 15-1]; (7) Pl.'s Opp'n to Defs.' Req. for Judicial Notice (the "RJN Opposition") [ECF No. 15-2]; and (8) Defs.' Resp. to Pl.'s Evidentiary Objections and the RJN Opposition (the "Response to Objections") [ECF No. 16].
[3] Notice of Removal ¶ 6; *see also* Complaint.
[4] Specifically, Monarrez asserts the following claims for relief: (1) Violation of Cal. Lab. Code §§ 510 & 1198 (Unpaid Overtime); (2) Violation of Cal. Lab. Code §§ 226.7 & 512(a) (Unpaid Meal Premiums); (3) Violation of Cal. Lab. Code § 226.7 (Unpaid Rest Premiums); (4) Violation of Cal. Lab. Code §§ 1194, 1197, & 1197.1 (Unpaid Minimum Wages); (5) Violation of Cal. Lab. Code §§ 201 & 202 (Final Wages Not Timely Paid); (6) Violation of Cal. Lab. Code § 204 (Wages Not Timely Paid During Employment); (7) Violation of Cal. Lab. Code § 226(a) (Non-Compliant Wage Statements); (8) Violation of Cal. Lab. Code § 1174(d) (Failure to Keep Requisite Payroll Records); (9) Violation of Cal. Lab. Code §§ 2800 & 2802 (Unreimbursed

to this Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under the Class Action Fairness Act (the "CAFA"), 28 U.S.C. § 1332(d).[5]

Monarrez filed the instant Motion on May 28, 2021; Defendants opposed on June 11; and Monarrez replied a week later.

**B.  Factual Allegations**

Defendants employed Monarrez as an hourly-paid, non-exempt employee from around May 2010 until October 2018.[6] Monarrez alleges that Defendants hired her and the other hourly-paid non-exempt employee class members (the "PCMs") and failed to compensate them for all hours worked, including missed meal periods and rest breaks.[7] Monarrez and the PCMs "worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants,"[8] yet Defendants failed to pay them "overtime compensation for all overtime hours worked."[9] On information and belief, Monarrez alleges that Defendants "engaged in a pattern and practice of wage abuse" against Monarrez and the PCMs, including by failing to pay them "for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law."[10] Monarrez further alleges that Defendants failed to pay in a timely manner all wages owed to Monarrez and the other PCMs upon their discharge or resignation.[11] Defendants also allegedly failed to pay minimum

---

Business Expenses); and (10) Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

[5]     Notice of Removal ¶¶ 1–3.
[6]     Complaint ¶ 20.
[7]     *Id.* at ¶ 21.
[8]     *Id.* at ¶ 26.
[9]     *Id.* at ¶ 39; *see also id.* at ¶¶ 49–55 (unpaid overtime).
[10]    *Id.* at ¶ 27; *see also id.* at ¶¶ 40, 58–66 (unpaid meal period premiums), & 69–75 (unpaid rest period premiums).
[11]    *See id.* at ¶¶ 33, 34, 43, 84–87, & 90–94.

wages;[12] failed to provide accurate wage statements;[13] failed to maintain accurate payroll records;[14] and failed to reimburse Monarrez and the PCMs for business-related expenses.[15]  Finally, Monarrez avers that those business practices, taken together, are unlawful in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*[16]

Monarrez purports to assert those claims on behalf of herself and a putative class defined as "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California."[17]  Monarrez also defines the following two subclasses:

> (Subclass A)  All class members who were subject to Defendants' practice of rounding time recorded for compensation of regular and overtime wages.
>
> (Subclass B)  All class members who were subject to Defendants' policy to require its hourly paid or non-exempt employees to remain on the work premises during rest breaks.[18]

C. **Allegations in the Notice of Removal and Supporting Evidence**

In their Notice of Removal, Defendants state that Monarrez is a resident of California[19] and that each Defendant is diverse from Monarrez (*i.e.*, no

---

[12] *See id.* at ¶¶ 32, 41, & 78–80.
[13] *See id.* at ¶¶ 35, 44, & 96–98.
[14] *See id.* at ¶¶ 36, 45, & 103–105.
[15] *See id.* at ¶¶ 37, 46, & 108–111.
[16] *See id.* at ¶¶ 113–117.
[17] *Id.* at ¶ 15.
[18] *Id.*
[19] Notice of Removal ¶ 15.

Defendant is a citizen of California).[20]  Defendants also assert that the aggregate amount in controversy for all PCMs exceeds $5 million.[21]

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction.  Accordingly, "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In every federal case, the basis for federal jurisdiction must appear affirmatively from the record.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).  "The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal quotation marks omitted).  Where Congress has acted to create a right of removal, those statutes, unless otherwise stated, are strictly construed against removal jurisdiction.  *See id.*  Unless otherwise expressly provided by Congress, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court."  28 U.S.C. § 1441(a); *see Dennis v. Hart*, 724 F.3d 1249, 1252 (9th Cir. 2013) (internal quotation marks omitted).

To remove an action to federal court under 28 U.S.C. § 1441(a), the removing defendant "must demonstrate that original subject-matter jurisdiction lies in the federal courts." *Syngenta*, 537 U.S. at 33.  In other words, the removing defendant bears the burden of establishing that removal is proper.  *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)

---

[20]   *See id.* at ¶¶ 16–20.
[21]   *Id.* at ¶ 26.

-5-

("The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." (quotation marks omitted)). Any doubts regarding the existence of subject matter jurisdiction must be resolved in favor of remand. *See id.* ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

### III. DISCUSSION

Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441, asserting jurisdiction under the CAFA. Therefore, Defendants bear the burden of establishing that this Court has original subject matter jurisdiction over the action.

#### A. Monarrez's Evidentiary Objections

Monarrez objects to the Declaration of John Bolen in support of the Opposition[22] on multiple grounds, including lack of authentication and lack of foundation.[23] The Court finds that the Bolen Declaration establishes that Mr. Bolen, in his capacity as Vice President of North American Operations for Constellis LLC (which includes the affiliated entities CSI and CGL), has the requisite personal knowledge of the employment records and payroll data for CSI and CGL.[24] *See Ruano v. Sears Roebuck & Co.*, 2015 WL 6758130, at *4 (C.D. Cal. Nov. 5, 2015) ("A declaration from a person with knowledge of the relevant data is clearly an appropriate form of evidence.").

Accordingly, the Court **OVERRULES** Monarrez's Evidentiary Objections.

---

[22]   Decl. of John O. Bolen in Supp. of the Opposition (the "Bolen Decl.") [ECF No. 14-1].
[23]   *See generally* Evidentiary Objections.
[24]   *See* Bolen Decl. ¶¶ 3 & 4.

B. **Defendants' Request for Judicial Notice**

Defendants request that the Court take judicial notice of the complaint in an unrelated action, *Vasquez v. RSI Home Products, Inc.*, Case No. 8:20-cv-01494-JWH-JDEx (C.D. Cal.) ("*Vasquez*").[25] Monarrez objects that the complaint in an unrelated action is irrelevant and that the Court cannot properly take judicial notice of the facts alleged in that complaint.[26]

Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may "judicially notice a fact that is not subject to a reasonable dispute because it . . . can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts regularly take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 941–42 (C.D. Cal. 2014) ("A court can consider evidence in deciding a remand motion, including documents that can be judicially noticed." (citing cases)).

Accordingly, the Court **GRANTS** Defendants' request for judicial notice. The Court takes judicial notice of the complaint filed in *Vasquez* and the allegations therein, but not the truth of those allegations (*i.e.*, the Court takes judicial notice of the fact that certain allegations were made).

C. **Legal Standard Under the CAFA**

Under the CAFA, the Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" there is minimal diversity. 28 U.S.C. § 1332(d)(2). To remove a case to federal court under the CAFA, the defendant must demonstrate that the amount in controversy exceeds

---

[25] *See* Opposition viii–ix.
[26] *See* RJN Opposition.

$5 million, exclusive of interest and costs. *Id.* The general rule is that a removing defendant's well-pleaded amount in controversy allegations "should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87; *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (in evaluating the amount in controversy, the court first looks to the complaint).

However, where, as here, the plaintiff challenges the removing defendant's jurisdictional allegation, under 28 U.S.C. § 1446(c)(2)(B) "removal . . . is proper on the basis of an amount in controversy asserted" by the defendant only "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. *Dart Cherokee*, 574 U.S. at 88. "In such a case, both sides submit proof and the court decides . . . whether the amount-in-controversy requirement has been satisfied." *Id.* The preponderance of the evidence standard means that the "defendant must provide evidence establishing that it is ***'more likely than not'*** that the amount in controversy" meets or exceeds the jurisdictional threshold. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (emphasis added). The defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. *Gaus*, 980 F.2d at 567. In addition to the contents of the notice of removal, the Court may consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations. *Ibarra*, 775 F.3d at 1197; *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). There is no presumption against removal jurisdiction in CAFA cases. *Dart Cherokee*, 574 U.S. at 89.

Here, as a threshold matter, Monarrez does not dispute that there is minimal diversity, as required by the CAFA.[27]  *See* 28 U.S.C. § 1332(d)(2).  The only jurisdictional dispute pertains to the amount in controversy requirement under the CAFA.

### D. Amount in Controversy

Monarrez challenges Defendants' invocation of CAFA jurisdiction on the ground that Defendants have not satisfied the amount in controversy requirement.  In their Notice of Removal, Defendants allege that the aggregate amount in controversy for all PCMs exceeds $5 million.[28]  To calculate the amount in controversy, Defendants analyzed the payroll and employment records of Defendant CSI for the four-year period from February 24, 2017, through March 29, 2021 (the "Class Period"),[29] which Defendants summarize as follows:

(a) There are 238 PCMs who currently work or have worked for CSI as non-exempt employees in California during the Class Period;

(b) There are 220 PCMs who separated their employment with CSI during the Class Period, while 199 PCMs separated their employment with CSI during the three-year period preceding service of the Complaint;

(c) PCMs worked an aggregate of 95,610 workdays for CSI during the Class Period;

(d) PCMs worked an average of 8.13 hours per workday for CSI during the Class Period;

---

[27]  *See generally* Motion; *see also* Notice of Removal ¶¶ 14–20.
[28]  Notice of Removal ¶ 26.
[29]  That is, the four-year period preceding service of the Complaint.

(e) CSI's PCMs had an average effective hourly rate of $33.28 per hour during the Class Period; and

(f) There are 112 PCMs who currently work or have worked for CSI as non-exempt employees during the one-year period preceding service of the Complaint (*i.e.*, February 24, 2020 through March 29, 2021), who were issued a total of 1,754 wage statements during that time period.[30]

Defendants also analyzed the same employment data for Defendant CGL, which Defendants summarize as follows:

(a) There are 901 PCMs who currently work or have worked for CGL as non-exempt employees in California during the Class Period; and

(b) There are 422 PCMs who currently work or have worked for CGL as non-exempt employees during the one-year period preceding service of the Complaint (*i.e.*, February 24, 2020 through March 29, 2021), who were issued a total of 9,277 wage statements during that time period.[31]

Based on these data, for the purpose of removal, Defendants calculated the amount in controversy for ***CSI PCMs only*** as follows:

| **Claim(s) for Relief (CSI PCMs Only)** | **Amount in Controversy** |
|---|---|
| Unpaid Wage Claims (assuming 12 minutes/day) | $954,379.02[32] |

---

[30]  *Id.* at ¶ 29(a)–(f).
[31]  *Id.* at ¶ 30(a)–(b).
[32]  Calculated as $49.91 [overtime rate] x 0.20 per day x 95,610 workdays. Notice of Removal ¶ 36; *see also* Bolen Decl. ¶¶ 5 & 6.  Defendants' calculation of this product as $954,570.24 is incorrect.  The Court has corrected that error.

-10-

| Claim(s) for Relief (CSI PCMs Only) | Amount in Controversy |
|---|---|
| Liquidated Damages on Unpaid Minimum Wages | $200,781.00[33] |
| Meal Period Claim (assuming 1 violation/week) | $636,380.16[34] |
| Rest Period Claim | $636,380.16[35] |
| Waiting Time Penalty Claim | $1,624,795.20[36] |
| Inaccurate Wage Statement Claim | $169,800[37] |
| Recordkeeping Penalty Claim | $56,000[38] |
| Statutory Attorneys' Fees | $1,069,676.69[39] |
| **TOTAL** | **$5,348,192.23**[40] |

Monarrez argues that Defendants have not shown, by a preponderance of the evidence, that the amount in controversy meets or exceeds the $5 million threshold because, according to Monarrez, Defendants' assumptions are unreasonable.[41] The Court addresses each of Monarrez's arguments in turn.

---

[33] Calculated as $10.50 [lowest minimum hourly rate] x 0.20 per day x 95,610 workdays. Notice of Removal ¶ 39.

[34] Calculated as $33.28 [average hourly rate of pay] x 95,610 workdays x 0.20 violation rate. *Id.* at ¶ 45.

[35] Calculated as $33.28 [average hourly rate of pay] x 95,610 workdays x 0.20 violation rate. *Id.* at ¶ 50. The Court notes that Defendants erroneously list a 40% violation rate in their calculation of this claim; however, paragraph 50 of the Notice of Removal clearly states that Defendants assume a 20% violation rate.

[36] Calculated as $34.02 [average hourly rate] x 8 hours per day x 30 days x 199 PCMs. *Id.* at ¶ 55.

[37] Calculated as $5,600 [112 PCMs x $50 initial violation] + $164,200 [1,642 subsequent wage statements (1,754 - 112) x $100 subsequent violation]. *Id.* at ¶ 60.

[38] Calculated as $500 x 112 PCMs. *Id.* at ¶ 62.

[39] Calculated as 1,155,351.24 + $636,380.16 + $636,380.16 + $1,624,795.20 + $169,800.00 + $56,000.00 = $4,278,706.76; $4,278,706.76 x 25% = $1,069,676.69. *Id.* at ¶ 65.

[40] In view of Defendants' error in calculating the Unpaid Wage Claims, *see* n.32 *supra*, their calculation of this sum as $5,348,383.45 is incorrect. The Court has corrected that error as well.

[41] *See generally* Motion.

### 1. Overtime and Minimum Wage Claims

With respect to her claims for unpaid overtime and failure to pay minimum wages (jointly, the "Unpaid Wage Claims"),[42] Monarrez contends that her allegation that she and the PCMs worked in excess of eight hours per day or 40 hours per week without receiving compensation for "**all** overtime hours worked," does not support Defendants' assumption that each PCM worked 12 minutes of unpaid time per day.[43]  That allegation, according to Monarrez, indicates that she "is not necessarily alleging that she **never** received overtime pay."[44]  Monarrez further argues that Defendants' assumption that "**every** CSI PCM worked long enough shifts even to trigger overtime **every** single day" for the Class Period is not supported by any documentary evidence.[45]  Similarly, with respect to her unpaid minimum wages claim, Monarrez contends that her allegation that Defendants failed to pay the PCMs "at least minimum wages for all hours worked"[46] does not mean that Defendants *always* failed to pay at least minimum wages.[47]

Defendants' assumption of 12 minutes of unpaid time per day is based upon evidence that the 238 CSI PCMs worked on average 8.13 hours per workday.[48]  That evidence is consistent with Monarrez's allegations,[49] and it

---

[42]  *See* Complaint ¶¶ 49–57 (unpaid overtime) & 78–83 (failure to pay minimum wages).

[43]  *See* Motion 6:19–7:9; Reply 4:8–5:20.

[44]  Motion 6:27–7:2 (emphasis in original).

[45]  *Id.* at 7:15–16 (emphasis in original).

[46]  Complaint ¶ 41.

[47]  *See* Motion 8:22–9:2.

[48]  *See* Bolen Decl. ¶ 6(d)(ii).  In support of their Opposition, Defendants provide additional evidence showing that the CGL PCMs worked on average 6.56 hours per workday.  *See id.* at ¶ 9(d)(ii).  Defendants estimate an additional AIC for the CGL PCMs unpaid wages of $997,164, plus liquidated damages of $249,291.

[49]  *See, e.g.*, Complaint ¶¶ 39, 41, 55, 81, & 82.

shows that it is more likely than not that if Defendants did fail to pay overtime—which the Court must assume at this stage of the litigation, *see Ibarra*, 775 F.3d at 1197 (in evaluating the amount in controversy, the Court first looks to the complaint); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability")—that failure probably occurred on a regular basis. Furthermore, Monarrez does not controvert Defendants' evidence, nor does she provide any alternative calculations. Accordingly, in the absence of any controverting evidence or alternative calculations, the Court finds that Defendants' assumptions are supported by sufficient evidence and are reasonable. *See Vasquez v. RSI Home Products, Inc.*, 2020 WL 6778772, at *6–*7 (C.D. Cal. Nov. 12, 2020) (assumption of 30 minutes of overtime per week was reasonable based upon evidence that class members worked on average 8.61 hours per day); *Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400, at *4 (C.D. Cal. Jun. 22, 2017) (finding that assumption of three hours per week was reasonable). *Cf. Schiller v. Ashley Distribution Services, Ltd.*, 2021 WL 1292511, at *4–*5 (C.D. Cal. Apr. 6, 2021) (remanding where the defendant failed to provide evidence, such as the length of class members' average workday, to support the reasonableness of its assumptions).

Based upon the foregoing, the amount in controversy for the Unpaid Wage Claims for CSI PCMs only is **$954,570.24**,[50] with liquidated damages in the amount of **$200,781**.[51] Furthermore, for the same reasons, the Court credits Defendants' calculations of the amount in controversy for the Unpaid Wage Claims for CGL PCMs, submitted in support of the Opposition, in the amount of **$997,164**, with liquidated damages in the amount of **$249,291**.[52] *See Dart*

---

[50] *See* Notice of Removal ¶¶ 36 & 37; Opposition 11:1–4.
[51] *See* Notice of Removal ¶ 39; Opposition 11:4–11.
[52] *See* Opposition 11:12–12:1; Bolen Decl. ¶ 9(d)(ii).

*Cherokee*, 574 U.S. at 88 (when a defendant's calculation of the amount in controversy is challenged, "both sides submit proof and the court decides . . . whether the amount-in-controversy requirement has been satisfied").

In sum, the total amount in controversy for the Unpaid Wage Claims is **$2,401,806.24**.

### 2. Meal and Rest Period Claims

With respect to Monarrez' claims for unpaid meal and rest period premiums (jointly, the "Meal and Rest Claims"),[53] Defendants assume that each CSI PCM experienced one meal and one rest break violation per week. In other words, Defendants assume a 20% violation rate.[54] Monarrez contends that that assumption is unreasonable.[55] She argues that Defendants fail to provide any foundation to support the assumption that the PCMs worked long enough shifts to mandate the provision of meal and rest periods, or any documentary evidence to support their calculations.[56] For example, Defendants do not address whether any of the PCMs were part-time employees.[57] The Court disagrees.

Monarrez alleges that "Defendants engaged in a pattern and practice of wage abuse," including by failing to pay Monarrez and the PCMs "for missed meal periods and rest breaks in violation of California law."[58] However, she does not allege any facts to show the frequency of the violations, nor does she proffer an alternative violation rate. A removing defendant is not required to

---

[53] *See* Complaint ¶¶ 58–68 (unpaid meal period premiums) & 69–77 (unpaid rest period premiums).
[54] *See* Notice of Removal ¶¶ 44 & 49.
[55] Motion 9:3–11 & 10:1–8.
[56] *Id.* at 9:15–23.
[57] *Id.* at 9:23–25.
[58] *Id.* at ¶ 27; *see also id.* at ¶¶ 40, 58–66 (unpaid meal period premiums), & 69–75 (unpaid rest period premiums).

"prove [the plaintiff's] case for [her] by proving the actual rates of violation." *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (citing *Oda v. Gucci Am. Inc.*, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015)). Thus, in challenging Defendants' violation rate here, Monarrez cannot simply "rely on the argument that [the defendant] has failed to prove the violation rate without alleging or offering evidence of a lower violation rate." *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *4 (C.D. Cal. Feb. 19, 2019). Indeed, in the absence of controverting evidence or alternative calculations, this Court and other courts in this district have held that a 20% assumed violation rate (or higher) is reasonable. *See Vasquez*, 2020 WL 6778772, at *8 (20% violation rate was reasonable based upon similar allegations (citing cases)); *Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *2–*3 (C.D. Cal. Sept. 12, 2019) (to similar effect); *Salazar v. PODS Enters, LLC*, 2019 WL 2023726, at *2–*3 (C.D. Cal. May 8, 2019) (to similar effect).

Accordingly, the Court finds that Defendants' assumed 20% violation rate for the CSI PCMs, which is based upon the average length of those PCMs' workday, is reasonable. To bolster their calculations, Defendants submit further evidence for the CGL PCMs. Based upon the average workday of the CGL PCMs (6.56 hours),[59] Defendants assume a 5% violation rate,[60] which the Court finds to be reasonable. Therefore, the amount in controversy for the Meal and Rest Claims for CSI PCMs is **$1,272,760.33**,[61] and the amount in controversy for the Meal and Rest Claims for CGL PCMs is **$997,164**.[62] In sum, the total amount in controversy for the Meal and Rest claims is **$2,269,924.33**.

---

[59]     *See* Bolan Decl. ¶ 9(d)(ii) & (iv).
[60]     *See* Opposition 17:5–11.
[61]     *See* Notice of Removal ¶¶ 45 & 50; Opposition 17:1–5.
[62]     *See* Opposition 17:5–11.

### 3. Waiting Time Penalties Claim

With respect to her Waiting Time Penalties Claim, Monarrez contends that Defendants unreasonably "assume maximum violations for *all* of the 199 CSI PCM[s] that ended their employment during [the limitations period]."[63] The Court finds that Defendants' assumption is reasonable.

California law provides that "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203(b).

Defendants identify 199 CSI PCMs who separated their employment during the relevant limitations period (February 24, 2018, through March 29, 2021).[64]  During that same period, the CSI PCMs' average effective hourly rate was $34.02.[65]  Defendants then assume that the CSI PCMs worked an average eight-hour workday during the Class Period (which is less than the CSI PCMs' average 8.15 hour workday).[66]  Based upon those assumptions, Defendants calculate the amount in controversy for Monarrez's Waiting Time Penalties Claim for the CSI PCMs as **$1,624,795.20**.[67]

In addition, Defendants submit further evidence for the CGL PCMs. Defendants identify 137 CGL PCMs who separated their employment during the relevant limitations period.[68]  Based upon the average workday of those CGL

---

[63] Motion 13:6–7 (emphasis in original).
[64] Notice of Removal ¶ 54.
[65] *Id.*; *see also* Bolen Decl. ¶ 6(c)(iii).
[66] *See* Bolen Decl. ¶ 6(c)(ii).
[67] Notice of Removal ¶ 55.
[68] *See* Bolan Decl. ¶ 9(c)(i)

PCMs (6.50 hours)[69] and their effective hourly rate of $42.43 per hour,[70] Defendants calculate the amount in controversy for Monarrez's Waiting Time Penalties Claim for the CGL PCMs as **$1,133,517.45**.[71] In view of Monarrez's allegations, Defendants' assumptions are reasonable.

In support of her Waiting Time Penalties Claim, Monarrez alleges that Defendants "engaged in a pattern and practice of wage abuse,"[72] including by "intentionally and willfully failed to pay Plaintiff and the [PCMs] who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ."[73] Monarrez further alleges that she and the PCMs are entitled to recover "the statutory penalty wages for each day they were not paid up to a thirty (30) day maximum pursuant to California Labor Code section 203."[74]

Pursuant to California Labor Code § 203(a), when an employer fails to pay a discharged employee, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," with a maximum period of 30 days. In this regard, the Complaint does not contain any limitation on the Waiting Time Penalties Claim, such as an allegation that Monarrez or any other PCM later received the allegedly unpaid final wages at some time less than 30 days after discharge. *Cf. Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *2 (C.D. Cal. Nov. 1, 2018) ("allegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties" (citing cases)). In the absence of any such limiting

---

[69] *See id.* at ¶ 9(c)(ii).
[70] *See id.* at ¶ 9(c)(iii).
[71] Opposition 21:4–8.
[72] Complaint ¶ 27.
[73] *Id.* at ¶ 86.
[74] *Id.* at ¶ 89.

allegation, coupled with the allegations regarding Defendants' "pattern and practice" of wage violations and the number of hours worked by Monarrez and the PCMs, Defendants reasonably assume that the PCMs may seek recovery of maximum penalties for the Waiting Time Penalties Claim.  *See Vasquez*, 2020 WL 6778772, at *9; *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *5–*6 (C.D. Cal. May 9, 2018) (maximum penalties was a reasonable assumption based upon similar allegations in the complaint); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *4 (C.D. Cal. July 28, 2017) (same).

Accordingly, the Court finds that Defendants' assumption of maximum penalties is reasonable.  The amount in controversy for the Waiting Time Penalties Claim for CSI PCMs is **$1,272,760.33**,[75] and the amount in controversy for the Waiting Time Penalties Claim for CGL PCMs is **$997,164**.[76] In sum, the total amount in controversy for the Waiting Time Penalties Claim is **$2,758,312.65**.

### 4. Final Calculation of the Amount in Controversy

The Court need not address the amount in controversy for Monarrez's other claims because the amount in controversy for the claims addressed in the preceding sections exceeds $5 million.  In view of the analysis set forth above, the Court calculates the total amount in controversy for the CSI and CGL PCMs as follows:

| Claim for Relief | Amount in Controversy |
|---|---|
| Unpaid Wage Claims | $2,401,806.24 |
| Meal and Rest Claims | $2,269,924.33 |
| Waiting Time Penalties Claim | $2,758,312.65 |
| **TOTAL** | **$7,430,043.22** |

---

[75]    *See* Notice of Removal ¶¶ 45 & 50; Opposition 17:1–5.

[76]    *See* Opposition 17:5–11.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Defendants have shown by a preponderance of the evidence that the amount in controversy meets or exceeds the $5 million threshold under the CAFA. Accordingly, the Court **DENIES** Monarrez's Motion.

**IT IS SO ORDERED.**

Dated: November 3, 2021

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE